585 F.2d 47
 18 Fair Empl.Prac.Cas. 700, 18 Empl. Prac.
Dec. P 8764
Jean H. PRANDINI, Individually, and on behalf of all other
persons similarly situated
v.
NATIONAL TEA COMPANY and the Amalgamated Food Employees
Union Local 590.
Appeal of Jean H. PRANDINI, Individually, and on behalf of
all other persons similarly situated, the representative
Plaintiffs, and class Plaintiffs, above named, and their
counsel, Michael P. Malakoff, Louise R. Malakoff, and
Berger, Kapetan & Malakoff.
 No. 77-2261.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) on Appellant's
Brief Only June 7, 1978.
Decided July 19, 1978.
 
 Michael P. Malakoff, Louise Reiber Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for appellant.
 Joseph M. Maurizi, Balzarini, Walsh & Maurizi, Jerome B. Lieber, Berkman, Ruslander, Pohl, Lieber & Engel, Jack J. Rosenberg, Raphael, Sheinberg & Barmen, P. A., Martin Lubow, Pittsburgh, Pa., for appellee.
 Before ADAMS, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This case, involving an award of attorneys' fees in a Title VII class action settlement, is before us for a second time. Although we conclude that the district court did not err in many aspects of its fee award order, a recent decision of this court, filed after the district court's order, and the district court's misconception of Lindy II with respect to compensation for time spent litigating the issue of attorneys' fees, require us reluctantly to vacate the district court's order and remand for redetermination of the proper fee award.
 
 
 2
 * The defendant National Tea Co. (National) had settled the plaintiff's claims by agreeing to pay the plaintiff class approximately $100,000, plus expenses (calculated at $18,000). The settlement also provided that National would pay reasonable attorneys' fees as awarded by the district court, up to $50,000. Thus two "funds" were created, a "damages fund" payable in full to the plaintiffs, and an "attorneys' fees fund" payable as approved by the court to the attorneys. To the extent the "attorneys' fees fund" exceeded the amount awarded as reasonable by the district court, that excess would revert to the defendants.
 
 
 3
 After a hearing on attorneys' fees, the district court awarded a total of $35,000 in fees. On appeal, this court vacated the district court judgment and remanded for further proceedings, holding that the district court had not made the findings required by Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) (Lindy I ) and Lindy Brothers Builders Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976) (Lindy II ). Prandini v. National Tea Co., 557 F.2d 1015 (3d Cir. 1977) (Prandini I ).[1]
 
 
 4
 On remand, the district court made findings required by Lindy I and Lindy II. In fixing the lodestar, the district court judge reduced attorneys Lubow's and Michael Malakoff's hourly rate from the $60 claimed to $40. The court reasoned that because Malakoff and Lubow had initially agreed to pay one-third of their fee to attorney Roberts (See note 1 Supra ), with no understanding that she was to do any work, they in effect had agreed to provide legal services at no more than a net return of $40 per hour.
 
 
 5
 The district court also reduced the "number of hours" (a component of the lodestar) by 10% For all attorneys except Roberts. In Lubow's case, this reduction was based on the duplication of work involved when he turned the case over to new counsel. In Michael Malakoff's case, the 10% Reduction was based on a purported overlapping of work with prior counsel, and evidence of overlapping work in the parallel and nearly identical case of Vallo v. The Great Atlantic and Pacific Tea Co., Civil No. 72-871 (W.D.Pa.), which was before the same district judge. In Louise Malakoff's case, the reduction was due to "considerable duplication in the work descriptions of Michael P. and Louise R. Malakoff. . . ." Dist.Ct.Op. of Aug. 18, 1977 at 3, App. at 268a.
 
 
 6
 The district court in accordance with Lindy I then allowed a contingency factor increase of 25%, and a quality factor increase of 25%, for both Malakoffs. The court allowed only 12 of the 22.75 hours claimed by Roberts, finding that only 12 hours of her time contributed to the advancement of the case.
 
 
 7
 Finally, the district court refused to award any attorneys' fees for the time spent in successfully appealing the first fee award (I. e., in Prandini I ), and in preparing the fee petitions.
 
 
 8
 The final district court award was as follows:
 
 
 9
 Berger, Kapetan & Malakoff $26,797.50
Rosenberg & Lubow $11,920.00
Sylvia Roberts $1,200.00
 
 
 10
 The remainder of the $50,000, I.e. $10,082.50, as well as all accumulated interest (over $3,000), was to be returned to the defendant National. The firm of Berger, Kapetan & Malakoff has appealed. As in Prandini I, Lubow and Roberts have not appealed.
 
 II
 
 11
 With respect to the $20 hourly rate reduction, the appellant attorneys contend that it was in reality a penalty for what the district court viewed as an unethical fee-splitting arrangement. They argue that a fee award may not be reduced because the trial judge finds that some of their conduct was unethical, that in any case their conduct was not unethical, and that the Disciplinary Rule[2] which allegedly proscribes such conduct is inconsistent with the policy of Fed.R.Civ.P. 23 and is an unconstitutional abridgement of the fee petitioners' first amendment associational rights and the litigants' right to petition for redress of grievances.
 
 
 12
 We need not pass upon these arguments, however.[3] Instead, we regard the district court's determination in this respect as no more than a Finding that the actual value that Lubow and Malakoff had assigned to their services (subject to eventual victory in the litigation) was $40 per hour, since they had agreed to pay one-third of their fee (I. e., one-third of $60 per hour, or $20 per hour) to Roberts without requiring that Roberts perform any services. Based on the evidence in the record, we cannot say that such a factual finding as to "hourly rate" is clearly erroneous. It will therefore be upheld. See Lindy II, supra, 540 F.2d at 109.
 
 III
 
 13
 Appellants next challenge the district court's 10% Reduction based on alleged duplication of services between this case and Vallo. The court based this determination on the similarity of briefs and papers filed in the two cases.[4]
 
 
 14
 As noted in Prandini I, we agree with the district court that "double payment for the same effort should be avoided by some apportionment of the fee between the two cases." 557 F.2d at 1091 n.3. Accordingly, if the evidence in the record supported a finding that time charged in Prandini had previously been charged in Vallo for the exact same work, the district court would not have abused its discretion if it had rejected the duplicated hours in Prandini. By the same token, if evidence in the record supported a finding that certain hours benefited both cases equally (as, for example, might well be the case where common legal research is incorporated into briefs in both cases), the district court would not have abused its discretion if it had prorated the hours between the two cases.[5] Neither of these two situations is presented by the record in this case.
 
 
 15
 Here, although the same district court judge passed upon the fee applications in Vallo and Prandini, there is no evidence in the record before this court that the hours attributed by Malakoff to his work in Prandini were the same hours for which charges were made in Vallo. (To the contrary, the evidence in this record indicates that Malakoff had not duplicated charges, but rather had charged Either Prandini or Vallo for his time.) Similarly, there is no evidence, nor are there any findings, as to which hours benefited both cases equally. Absent evidence to support the district court's finding of duplication or overlap, we cannot sustain the 10% Fee reduction imposed by the district court.
 
 
 16
 We also recognize that the district court's Method of proration Viz a reduction of 10% "across the board" is in general inconsistent with the requirement of Lindy I and Lindy II that fee awards must be based upon record evidence, and in particular does not comport with our recent case of Hughes v. Repko, 483 F.2d 578 (3d Cir. 1978).
 
 
 17
 In Hughes, which involved an award of attorneys' fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, the district court had reduced the lodestar (number of hours X hourly rate) by 66 2/3% Because the plaintiffs had not prevailed on two-thirds of their claims. This court, in Chief Judge Seitz's majority opinion, rejected the district court's approach and held that "an unanalyzed allocation of hours will not be permissible in arriving at the lodestar." Hughes v. Repko, supra, at 487. Instead, we required that the district court make findings as to the number of hours reasonably necessary to litigate the claims on which plaintiffs prevailed.
 
 
 18
 The clear thrust of Hughes is that district courts, in awarding attorneys' fees, may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion. If the court believes that a fee reduction in the lodestar is indicated, it must analyze the circumstance requiring the reduction and its relation to the fee, and it must make specific findings to support its action. See also In the Matter of Meade Land and Development Co., Inc., 577 F.2d 858 (3d Cir. 1978).
 
 
 19
 Thus, in the case Sub judice, if the district court judge is of the opinion that the "number of hours" to be compensated must be reduced because some of those hours were charged to or directly benefited a parallel case, the overlapping hours must be identified in the record, and the district court must make findings as to the number of hours of duplication. Here, since the district court made no such findings, we must reverse that part of the district court determination which reduced Malakoff's award by an overall 10% Because of alleged duplication of work.
 
 
 20
 As we have previously indicated, the district court could not have been aware of the importance which this Circuit has placed upon the need to identify Specifically the lodestar components, because our decision in Hughes v. Repko, supra, was not rendered until nine months after the distinguished district court judge filed the order presently on appeal. It is true that our decisions concerning attorneys' fees have in each instance required an analysis to be made of hours and rates. Yet until Hughes we had not clearly required that the allocation of hours for the purpose of determining the lodestar be analyzed so precisely, nor had we held that an automatic percentage reduction in the lodestar is "legally impermissible." Hughes v. Repko, supra, at 486. Just as the district court judge in Merola v. Atlantic Richfield Co., 493 F.2d 292, 298 (3d Cir. 1974) (Merola I ), had been in no position to foresee the application of the subsequently filed case of Lindy I to the facts of Merola, so too we appreciate that the district court judge in this case could not have foreseen our decision in Hughes. See also Gibson v. United States, 567 F.2d 1237, 1240, 1246 n.23 (3d Cir. 1977), Cert. denied, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).
 
 IV
 
 21
 Appellant attorneys' last contention is that the district court erred by refusing to award a fee for the successful appeal of the first fee award and for the time spent in the preparation of the fee petition. The district court had concluded (See Dist.Ct.Op., Supra, at 5-7, App. at 270a-271a) that this case was controlled by Lindy II, wherein it was held that "(t)here being no benefit to the fund from services performed by (attorneys) in connection with their fee application, there should be no attorneys' fee award from the fund for these services." 540 F.2d at 111.
 
 
 22
 The district court erred in equating the situation in Lindy II with the fee application and "attorneys' fees fund" in this case. Lindy II is an equitable common fund case. As such, attorneys' fees are paid out of the one overall fund, and any increase in the attorneys' fee award must necessarily result in a decrease in the plaintiffs' actual recovery. The rationale behind the rule permitting awards of attorneys' fees out of the fund in such cases is that the attorney's services benefit the fund by creating, increasing or preserving it. See Lindy II, supra, 540 F.2d at 111. However, as the court in Lindy II reasoned, an attorney's time expended in connection with the fee application or a fee appeal does not benefit the fund and hence does not benefit the plaintiff class. See id. In fact, it is at that point that the attorney's interest becomes Adverse to the interest of the class which he represents, See Prandini I, supra, 557 F.2d at 1020. To award attorneys' fees for services which do not benefit the fund would no longer comport with the policy of the equitable fund doctrine, and we so held in Lindy II.
 
 
 23
 This case is Not an equitable fund case. The award here was statutorily authorized, and was made pursuant to 42 U.S.C. § 2000e-5(k). Prandini I, supra, 557 F.2d at 1017.[6] The fact that the parties agreed to a $50,000 ceiling on the ultimate fees which could be awarded does not, in our opinion, implicate Lindy II. That circumstance the $50,000 ceiling means only that any award approved by the court must be prorated to the extent it may exceed $50,000. See id. at 1018-19 & n.2.
 
 
 24
 While it is possible to characterize this $50,000 ceiling as a "fund", that characterization has little analytical value, for in this case, the "attorneys' fees fund" is separate from and independent of the plaintiffs' "damages fund". Here, the attorneys' fees do not come out of, nor do they reduce, the plaintiffs' recovery. Hence, the award in this case is unlike a common fund award, which does reduce the plaintiffs' recovery. The fee award made here may be analyzed on the same terms as a statutory fee award, which the defendant would pay, and which would not in any way affect or reduce the plaintiffs' award.
 
 
 25
 It is no answer to say that the attorneys' fee in this case In effect reduced the plaintiffs' recovery because the $100,000/$50,000 arrangement was made at the outset, and was an apportionment between the plaintiffs and their attorneys of the amount the defendants were willing to pay in settlement. The fact is that any of the $50,000 which is not awarded to plaintiffs' attorneys will not be paid to the plaintiffs to augment their settlement fund, as is the case in the normal common fund situation. See Lindy II. Rather, any such excess will be returned to the defendant National. App. at 132a. It is this fact which ultimately makes this case distinguishable from Lindy II, and requires a different result.[7]
 
 
 26
 Thus, we hold that this case must be treated as one involving a statutorily authorized attorneys' fee award. In statutory fee award cases, the considerations of Lindy II and the equitable fund cases do not apply. Statutorily authorized fees are not paid out of the plaintiffs' recovery, and the attorney in seeking his fee is not acting in any sense adversely to the plaintiffs' interest. Hence, the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award. If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, Viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies. See, e. g., Hughes v. Repko, supra, at 489 (opinion of Seitz, C. J.), 490 (Rosenn, J., concurring), 491-492 & n.5 (Garth, J., concurring). Indeed, courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee I. e. for time spent on the fee application and successful fee appeals. See, e. g., Souza v. Southworth, 564 F.2d 609 (1st Cir. 1977); Panior v. Iberville Parish School Board, 543 F.2d 1117 (5th Cir. 1976); Hairston v. R & R Apartments, 510 F.2d 1090 (7th Cir. 1975); Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Parker v. Matthews, 411 F.Supp. 1059 (D.D.C.1976), Aff'd, 182 U.S.App.D.C. 322, 561 F.2d 320 (1977); Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D.Cal.1974), Aff'd, 550 F.2d 464 (9th Cir. 1977), Rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) (The Supreme Court specifically declined to consider the propriety of the fee award, 436 U.S. at 553 n.3, 98 S.Ct. 1975); Torres v. Sachs, 69 F.R.D. 343 (S.D.N.Y.1975), Aff'd, 538 F.2d 10 (2d Cir. 1976).[8]
 
 
 27
 We hold therefore that the appellant attorneys are entitled to be compensated for time spent successfully appealing the first fee award, and in preparing the fee petition, to the extent that time was reasonably necessary to obtaining a reasonable fee award, See Hughes v. Repko, supra, at 487 a determination to be made in the first instance by the district court. Accordingly, we reverse that part of the district court's order which did not include such time in its fee award.
 
 V
 
 28
 We conclude that, while the opinion of the district court dated August 18, 1977 was correct in most aspects, it was in error insofar as it (1) reduced without appropriate findings the fee allowed to Berger, Kapetan & Malakoff by 10% Because of alleged duplication of attorneys' services with the Vallo case, and (2) declined to award the firm of Berger, Kapetan & Malakoff a fee for time spent in preparing and presenting the fee petition, and in successfully appealing the first fee award. Thus the district court's order of August 18, 1977, granting an award of attorneys' fees, will be vacated to the extent it grants a fee award of $26,797.50[9] to Berger, Kapetan & Malakoff and will be remanded for further proceedings consistent with this opinion and our opinion in Hughes v. Repko, supra.
 
 
 29
 WEIS, Circuit Judge, dissenting.
 
 
 30
 The case law on counsel fees offers some proof of validity to the adage that attempts to simplify often lead to increased complexity and efforts to clarify frequently cause only confusion. The determination of reasonable fees is an inexact science at best, and I fear our efforts to make it more precise by refining and qualifying the standards set out in our opinions in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) (Lindy I ), and Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976), (In banc ) (Lindy II ), have not been particularly helpful to district judges. The guidelines we set out in those opinions are route markers that should be followed in groping for that elusive concept "reasonable compensation." But even though the ultimate result is a specific figure, wearing an air of precision, we must not forget that it is, after all, a product of compromise, estimates, and inevitably, subjective evaluation.
 
 
 31
 The majority faults the district court for reducing the requested fee by 10% Because of an overlap of work with original counsel and because of similar work in a companion case. The trial judge presided over both cases, approved the fee in the companion case, and was familiar with the details of the litigation. I doubt that it is possible for a judge to make an allocation in the circumstance of this case with mathematical exactitude, and an estimate is the best that can be done. As we said in Lindy II, supra, 540 F.2d at 116:
 
 
 32
 "(W)e do not intend that a district court in setting an attorneys' fee become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It was not and is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief."
 
 
 33
 In Prandini v. National Tea Co., 557 F.2d 1015 (3d Cir. 1977) (Prandini I ), we remanded for reevaluation of the total fees under the Lindy principles, but agreed that the trial judge was correct in requiring some apportionment to avoid payment for duplicated work. I believe that under the circumstances, we should accept his informed estimate of a 10% Reduction as being a reasonable adjustment for overlap.[1]
 
 
 34
 Appellants also contend that they should be reimbursed for their time in prosecuting the first appeal (and presumably this one also), as well as be compensated for preparing the fee petition. As the majority points out, in Prandini I, we recognized that this is a statutory fee and not an equitable fund case. But the district court's concern in Prandini I, which we shared, was that the arrangements between the parties blurred the distinction between the settlement on the merits and counsel fees. The district court characterized the settlement as "a package deal" and stated that in reality there was only one fund for the class and counsel fees. In these circumstances, I do not believe the court erred in applying the Lindy II rule that there should be no award to attorneys for the services performed in securing their own fees. These particular services did not benefit the class, but only the appellants.
 
 
 35
 It is true, as the majority observes, that amounts not awarded to appellants will not now go to the class. But it was for this very reason the district court disapproved of the settlement agreement in this case and in Prandini I we were in accord. To now treat the case as one involving separate funds for settlement and counsel fees perpetuates the problems explicated in our first opinion. This is no truly adversarial proceeding since in this case, as in Prandini I, the appeal is Ex parte. It is not the defendant with which the appellants quarrel but rather the district court. Under the majority's ruling, the appellants presumably may continue to litigate this matter at the defendant's expense until the $50,000 fund is exhausted. Beyond that figure, a prorata contribution might have to be made by appellants' co-counsel through a reduction in the fee already awarded to them.
 
 
 36
 Considering the posture of this case, I believe the trial judge did not err in application of the Lindy II rule, and I would affirm the judgment of the district court.
 
 
 
 [1]
 In Prandini I we announced a supervisory rule requiring that, in settlements of cases involving statutorily authorized attorneys' fees, the damage settlement in favor of the plaintiffs should be made first and separate from the award of attorneys' fees. Only after court approval of the damage settlement should negotiation for appropriate attorneys' fees begin. 557 F.2d at 1021
 We also held in Prandini I that the district court had erred by reducing the fund available for attorneys' fees by $10,000, the amount originally sought by attorney Sylvia Roberts. Ms. Roberts had agreed with the law firm of Berger and Kapetan that she would receive one-third, later reduced to 20% Of the total attorneys' fees awarded as a sort of "referral fee". The district court found this arrangement to be unethical under the Code of Professional Responsibility. We held that Ms. Roberts's fee should be determined as any other, and, after proration, was to be paid from the $50,000 available fund.
 
 
 [2]
 The district court believed that the fee arrangement violated DR 2-107(A) (2), which provides:
 (A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
 (2) The division is made in proportion to the services performed and responsibility assumed by each.
 
 
 [3]
 Without deciding this issue, we are nevertheless inclined toward the view that a district court, in awarding attorneys' fees may consider an attorney's unethical conduct as a factor in its determination of a "reasonable" fee. See Hughes v. Repko, 578 F.2d 483, at 491-493 & nn.5 & 6 (3d Cir. 1978) (Garth, J., concurring). We know of no reason why a court must "reward" a lawyer for improper conduct; concomitantly, it is surely within a district court's discretion to take such conduct into account in the awarding of attorneys' fees. Of course, the court in so doing must afford the attorney an opportunity to refute the charge of unethical conduct
 
 
 [4]
 Additionally, the original attorney in this case, Lubow, testified as to the similarity of the Prandini and Vallo cases, and that he had "received those (two) cases in the same interview." App. at 152a-154a. Lubow admitted that "there were many issues where I could do research for both cases simultaneously", but he stated that in such instances he "marked it in (his) book and charged only one-half of that time in (his) affidavit" submitted in support of the Prandini fee petition. App. at 153a. Also, see Lubow's testimony at 168a-171a
 When the district court at the fee hearing noted that Malakoff had not "given any credit for the time which was equally devoted to Vallo and Prandini," Malakoff replied that there was no "double billing" and that "time was charged to one case and not the other. . . ." App. at 177a-178a. Malakoff testified that when a common problem was researched, and was billed to Prandini, it would not be billed to Vallo. Id.
 
 
 [5]
 If the district court had accepted Malakoff's method of charging "common time" to one case or the other (See note 4 Supra ), it most likely would not have been an abuse of discretion. Similarly, as we note in the text, it would not be an abuse of discretion for the court to require that Malakoff use Lubow's method, Viz, prorate "common time" between the two cases (See note 4 Supra ). But to determine or to reduce the fee award on this basis would require further submissions by Malakoff and additional findings by the district court
 
 
 [6]
 We recognized in Prandini I that this case involved a statutorily authorized fee award. See 557 F.2d at 1017, 1020-21
 
 
 [7]
 We observe as well that the $100,000 settlement represents approximately 90% Of the plaintiffs' total estimated back pay loss. See App. at 31a-33a
 
 
 [8]
 The district court attempted to distinguish the cases cited by the fee petitioners on the ground, Inter alia, that the fee award was contested by the losing party. In this case, on the other hand, the award is uncontested and the appeal is Ex parte. It is true that the case is stronger for awarding compensation for time spent litigating the issue of a reasonable fee when that litigation is required because of opposition by an adversary. It is obviously fair to grant a fee for time spent litigating the fee issue, at least if the fee petitioner is successful and his claim as to a reasonable fee is vindicated, since it is the adversary who made the additional work necessary. Nonetheless, where it is the defendant, and not the plaintiff class, which will pay the fee, even if the fee application is uncontested by the defendant, it is reasonable to include in the award the time spent on the fee petition and on a successful fee appeal I. e. time reasonably necessary to obtain a reasonable fee
 
 
 [9]
 The order of August 18, 1977 the order appealed from awarded $29,797.50 to Berger, Kapetan & Malakoff. This figure included attorneys' fees of $26,797.50 and reimbursement for direct costs advanced of $3,000. By order entered August 25, 1977, after the notice of appeal was filed, the district court amended the August 18th order such that only the $26,797.50 in attorneys' fees was awarded to Berger, Kapetan & Malakoff. This amendment was entered to reflect the fact that the $3,000 costs had already been paid under a prior order of the district court. No issue has been raised on this appeal respecting the payment of costs
 
 
 [1]
 When appellants originally presented the petition for settlement of this case to the district court, they agreed to accept a fee of $24,000. The district court awarded $21,000. It is interesting that on remand the court awarded $26,797.50, an amount somewhat larger than appellants had originally agreed to accept