David A. Johnston, Jr., Harrisburg, Pa., for plaintiffs.

William J. Peters, Harrisburg, Pa., for defendants.

**HOLY SPIRIT ASSOCIATION FOR the UNIFICATION OF WORLD CHRISTIANITY et al., Plaintiffs,**

v.

**Miles A. CAUGHEY, Township Manager, et al., Defendants.**

Civ. No. 78–303.

United States District Court, M. D. Pennsylvania.

Aug. 24, 1978.

OPINION

MUIR, District Judge.

I. Introduction.

Plaintiffs filed this case seeking preliminary and permanent injunctive relief against the Defendants, officials of Susquehanna Township, Dauphin County, Commonwealth of Pennsylvania, who had prohibited members of the Unification Church from soliciting in Susquehanna Township. On March 31, 1978, this Court held a hearing on the Plaintiffs' request for a temporary restraining order and the same day issued such an order prohibiting Defendants Caughey and Trapnell, Susquehanna Town-

ship officials, from carrying out acts in restriction of the rights of the Plaintiffs to distribute religious literature and solicit funds for the Unification Church within the township. Stipulations filed by counsel approved by the Court on April 7, 1978 and May 10, 1978 resolved the issues of temporary and permanent injunctive relief. On May 23, 1978, the Plaintiffs filed a motion for counsel fees and filed a supporting brief on June 6, 1978. The Defendants filed a memorandum of law in opposition to the motion on June 16, 1978. A hearing relating to the issue of whether counsel fees should be awarded and, if so, what the reasonable amount of such fees should be, was held on August 17, 1978. The following constitute the Court's findings of fact, discussion, and conclusions of law.

## II. Findings of Fact.

1. Members of the Unification Church regularly engage in door-to-door canvassing and regularly go to places where the public gathers for the purpose of expressing their religious beliefs through the distribution of tracts, literature, and publications and through verbal discussion and for the purpose of soliciting for contributions to off-set such programs and to support other church programs. (Undisputed)

2. Shortly prior to December 12, 1977, Gary Abrahams, the Unification Church Team Leader responsible for activities in the Harrisburg area, attempted to obtain from various officials of Susquehanna Township permission for the above-mentioned church activities. He was unable to obtain any licensing or permission. (Undisputed)

3. On or about December 12, 1977, church member Frank Lagrotteria was arrested in Susquehanna Township and charged with "soliciting without a permit." (Undisputed)

4. Plaintiff Scott H. Greene is a lay missionary of the Unification Church.

5. On or about December 18, 1975, Plaintiff Scott H. Greene visited various officials of Susquehanna Township for the purpose of reaching an agreement with the

Township concerning the prosecution of Frank Lagrotteria and future permission for various members of the Church. (Undisputed)

6. At a meeting between Scott H. Greene and William C. Trapnell, Jr., Chief of Police of Susquehanna Township, and a Defendant herein, on or about December 18, 1977, Chief Trapnell indicated that at an earlier time he had issued a memorandum to the Township Manager recommending that no further permits be issued to the missionaries of the Unification Church. (Undisputed)

7. A copy of this memorandum dated February 7, 1977 was subsequently made available to the Plaintiffs, which memorandum provided in pertinent part:

"I would respectfully request that the permit authorizing the solicitation by the Unification Church be dishonored and withdrawn, and that they be prohibited from ever soliciting in this township again. In the future, any requests coming to my attention from this organization will be denied, and effective this date, we will arrest all representatives caught soliciting, on view." (Undisputed)

8. On or about December 18, 1977, Scott H. Greene met with John A. Roe, Esq., solicitor for Susquehanna Township at his office at 101 North Front Street, Harrisburg, Pennsylvania, at which time Mr. Roe was provided with legal authorities sufficient to indicate to him that prosecutions brought against members of the church and prior citations which had been issued against members of the church by township officers were unconstitutional and illegal.

9. On or about December 18, 1977, John A. Roe and Miles Caughey, Township Manager of Susquehanna Township, refused to assist Scott H. Greene in obtaining a permit for the Church. (Undisputed)

10. Scott H. Greene met with Miles A. Caughey on or about December 18, 1977, at which time Mr. Caughey expressed strong statements of distaste about the Unification Church and its activities. Mr. Caughey also recounted occasions in the past when the

Township had interfered with members of the Hare Krishna sect. He told Scott Greene that an appearance before the Board of Supervisors would be fruitless.

11. On or about March 27, 1978, Scott H. Greene discussed the matter with William J. Peters, the new Solicitor of Susquehanna Township, spoke with Township Manager Caughey and informed them that the Church would be bringing legal action unless the Township's position was changed. At that time, Mr. Caughey indicated that a meeting of the Township Commissioners would be held on Wednesday, March 29, 1978 at which the issue of issuing permits or permission to members of the Plaintiff sect would be discussed, but that he did not foresee any change in the township position.

12. When no positive response was forthcoming, on March 30, 1978, the complaint for injunctive and declaratory relief was filed in the above-entitled matter. (Undisputed)

13. On March 31, 1978, after hearing, this Court issued a temporary restraining order effectively prohibiting such interference except with regard to distribution by Plaintiffs of candy and other non-religious items.

14. On April 4, 1978, after negotiation, the parties agreed to a preliminary injunction expanding the temporary restraining order to include distribution of non-religious articles and on May 1, 1978, after further negotiation, the parties entered into a stipulation of counsel which was subsequently adopted by this Court in the Order of May 10, 1978 which stipulation ordered permanent full solicitation by Plaintiffs in Susquehanna Township subject to such restrictions as were set forth in said stipulation. (Undisputed)

15. The attorney for the Plaintiffs in the above-captioned matter is David A. Johnston, Jr.

16. Mr. Johnston is an individual practitioner with offices in Harrisburg, Pennsylvania.

17. Mr. Johnston has a normal hourly charge of $55.00 per hour which is in the usual range of fees charged by sole practitioners in the Harrisburg, Pennsylvania area. Mr. Johnston has charged $55.00 per hour for his services for the past 3½ years.

18. Plaintiffs' risk of eventual failure in this matter was not great.

19. There was no abnormal degree of complexity involved in the legal services performed by Plaintiffs' counsel.

20. Mr. Johnston claims that a total of 58¼ hours of work was expended by him in this case up to and including May 16, 1978.

21. One of those hours represents time spent in an interview on WHP–TV, a Harrisburg television station.

22. Prior to the filing of this action, Mr. Johnston was supplied with documents from a prior lawsuit in which Scott H. Greene was a successful Plaintiff.

23. In the past, Mr. Johnston has conducted some civil rights litigation in federal court.

24. Mr. Johnston maintains time records concurrently with the performance of the services reflected in those records.

25. In addition to the 58¼ hours which Mr. Johnston claims to have spent prior to May 16, 1978, he states that he worked approximately 30 hours in preparing the petition for attorney's fees and that an additional 7 hours of his time was expended by his attendance at the counsel fees hearing on August 17, 1978.

26. Mr. Johnston has not submitted any concurrently kept time records for hours which he spent after May 16, 1978 and prior to the counsel fees hearing.

27. The television interview was not reasonably necessary to insure the success of this litigation.

### III. Discussion.

 The Plaintiffs in this case, members of the Holy Spirit Association for the Unification of World Christianity, brought this action under 42 U.S.C. § 1983 seeking a vindication of their constitutional rights un-

der the First Amendment. By obtaining a temporary restraining order and later entering into stipulations in lieu of hearings on preliminary and permanent injunctive relief which prevented the Defendants from continuing to deny Church members permits to solicit within Susquehanna Township, the Plaintiffs were clearly the prevailing parties in this litigation. 42 U.S.C. § 1988 states that in any proceeding brought to enforce rights under § 1983, the Court, in its discretion, may award attorney's fees to the prevailing party as a part of his costs of litigation. An award of attorney's fees is ordinarily made to a prevailing Plaintiff in order to further the congressional policy of encouraging litigation to vindicate civil rights. Only if special circumstances exist should the Court decline to award fees under § 1988. *See Brown v. Culpepper*, 559 F.2d 274, 277–78 (5th Cir. 1977); *cf. Christianburg Garment Company v. Equal Employment Opportunity Commission*, 434 U.S. 412, 414, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), *citing Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The Defendants have not advanced any reasons which would constitute special circumstances justifying a decision not to award attorney's fees to the Plaintiffs in this case. Consequently, the Plaintiffs are entitled to their reasonable attorney's fees as part of their costs.

Once the Court has determined that a party is entitled to attorney's fees, the Court must then determine the reasonable amount of those fees. In *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), the Court of Appeals stated that in determining the reasonableness of an attorney's fees award under 1988, the "lodestar" approach of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (Lindy II) is a proper first step in the calculation. In *Lindy II* the Court of Appeals stated that the "lodestar" of attorney's fees is equivalent to the reasonable hourly rate of the lawyers who performed the services in the case multiplied by the number of hours reasonably devoted to the preparation and litigation of the issues. It

is the view of the Court that the rate charged by David A. Johnston, Jr., the Plaintiffs' attorney who performed all of the services rendered on behalf of the Plaintiffs in this case of $55.00 per hour is a reasonable hourly rate for a practitioner in his situation and that it is also a reasonable charge for the type of services performed in this case. Mr. Johnston has submitted time records to support his claim that he spent 58¼ hours of work preparing this case up to and including May 16, 1978. However, at the hearing on attorney's fees, Mr. Johnston admitted that one hour of that total which was spent conducting an interview with WHP–TV, a Harrisburg television station was not reasonably necessary to insure the success of this litigation. All of the other hours expended by Mr. Johnston were necessary and do not represent an unreasonable expenditure of time considering the initial research which he undertook prior to the filing of the complaint, the conducting of a hearing for a temporary restraining order, and the preparation of stipulations in lieu of preliminary and permanent injunction hearings. Consequently, the Court determines that the number of hours reasonably devoted to this case is 57¼ hours up to and including May 16, 1978. Therefore, the "lodestar" is $55.00 per hour multiplied by 57¼ hours or $3,148.75.

After computing the "lodestar," the Court must then consider both the contingent nature of success in the action and the quality of the attorney's work. In this case, the parties agree that the contingent nature of success was not great and consequently, no increase in the "lodestar" amount is justified by the contingency factor. There is also no indication in this record that the quality of Mr. Johnston's work, or the manner in which he discharged his professional responsibility in the case, is exceptional either in extremely high quality or lack of quality and that no adjustment to the "lodestar" should be made based upon the quality of work factor. In so stating we certainly do not intend in any way to demean Mr. Johnston's services. It is my view that he performed in a perfectly com-

petent and creditable manner. Finally, in *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), slip opinion at 15, Judge Garth, concurring, stated that when making an award under the Civil Rights Attorney's Fees Awards Act, once the "*Lindy* amount" or "lodestar" as adjusted for contingency and quality, is determined, a "post-*Lindy* discretionary adjustment" may be made to take into account whether the amount of attorney's fees should be increased or decreased so as to further the important substantive purposes of the Civil Rights Act. It is the view of the Court that in this case the award of attorney's fees in the amount requested by the Plaintiffs is sufficient to serve as a deterrent to other officials in the position of the Defendants in this case and to insure that it is less likely, after the prosecution of this action, that the Plaintiffs' civil rights will be violated by other persons in similar circumstances. On the other hand, a fairly substantial award of attorney's fees is justified in this case because important First Amendment rights of the Plaintiffs and other persons in their situation were vindicated through the prosecution of this action. Therefore, the Court sees no reason to make an adjustment in the *Lindy* amount of the award because that amount is in keeping with the substantial purposes of the Civil Rights Act.

In *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978), the Court stated that in the case involving an award of attorney's fees under statutory authorization, the award may reflect time spent in the preparation of the fee petition. Mr. Johnston testified that he has spent approximately 37 hours, including hearing time, in presenting his position to the Court relating to the award of attorney's fees. However, he has not supplied the Court with any concurrently kept time records relating to this claim. Therefore, the Court may not, at this time, award attorney's fees based upon time spent in preparing the attorney's fees petition because of the provisions at ¶ 8 of Order # 2 in the above-captioned case dated March 31, 1978.

However, should Mr. Johnston desire a further award, he may submit a further petition and such appropriate time records within 15 days of the date of this Order. Although Defendants did not contest that the amount of time testified to by Mr. Johnston at the first hearing was reasonably necessary to insure an award of attorney's fees, they may, if they so desire, file any objections to Mr. Johnston's request within 15 days of the date of the filing of such further petition and the time records. The Court will not consider any request for attorney's fees filed later than 15 days from the date of this Order unless good cause is shown for the late filing.

■ Finally, Mr. Johnston has requested certain xeroxing fees and other costs which are not normally a part of the fee which he charges for services rendered. In *Skehan v. Board of Trustees of Bloomsburg State College*, 436 F.Supp. 657, 667 (M.D.Pa.1977), the Court held that expenses such as telephone calls and cost of travel are not authorized by the Civil Rights Attorney's Fees Awards Act and may not be awarded under that Act to a prevailing party. The Court is bound in this case by the *Skehan* holding and therefore is without power to award Mr. Johnston his xeroxing costs and other expenses listed in his attorney's fees petition.

### IV. Conclusions of Law.

1. The Plaintiffs in this case are the prevailing parties in an action brought under 42 U.S.C. § 1983.

2. The Plaintiffs are entitled to an award of reasonable attorney's fees from the Defendants.

3. The amount of $3,148.75 is a reasonable amount of fees to be awarded for the services performed by the Plaintiffs' attorney, David A. Johnston, Jr., in this case up to and including May 16, 1978.

An appropriate order will be entered.