584 S.E.2d 523

**Angela D. HOLLEN, Plaintiff Below, Appellant**

v.

**HATHAWAY ELECTRIC, INC., Defendant Below, Appellee.**

**No. 30681.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 2003.

Decided June 26, 2003.

---

668

Regina L. Charon, Morgantown, for Appellant.

James M. Pool, Clarksburg, for Appellee.

David M. Hammer, Hammer, Feretti & Schiavoni, Martinsburg, Amicus Curiae for West Virginia Employment Lawyers Association.

PER CURIAM:

Appellant Angela Hollen sued her former employer, appellee Hathaway Electric, Inc., seeking compensation for vacation days she claimed to have earned prior to leaving employment. Appellee settled the day of trial, offering to pay Ms. Hollen's initial demand, with the amount of attorney's fees to be determined by the court. Counsel for Ms. Hollen submitted a Motion for Attorney's Fees asking to be paid for 104 hours at $200 per hour. The circuit court granted only 67 hours at $100 per hour. Because we find that the circuit court erred in both the number of hours approved and the amount per hour awarded, we reverse.

## I.

## FACTS

Appellant Angela D. Hollen worked as a secretary, first for Hathaway Electrical Services and then for Hathaway Electric, Inc, from October 1995 to October 11, 2000, when she resigned from employment.[1] Ms. Hollen resigned because of a dispute over vacation time. Specifically Ms. Hollen alleged that her supervisor, Ronald Hathaway, refused to allow her to take a vacation at a time she had scheduled and he had previously approved. After her resignation, Hathaway Electric, Inc. refused to pay Ms. Hollen for unused vacation days that she alleged she had earned during her last year of employment. According to Ms. Hollen, her employer took the position that, although she essentially worked the same job for five years, because Hathaway Electric Services and Hathaway Electric, Inc. are technically two different companies, she had not worked long enough for the second company to earn the disputed days of vacation.[2]

Unable to resolve the disagreement, Ms. Hollen obtained counsel, who wrote to Hathaway Electric and requested $2,250, consisting of $500 in vacation pay, $250 in attorney's fees, and $1,500 in liquidated damages, basing her claim upon the West Virginia Wage Payment and Collection Act, W. Va.Code 25–1–1, *et seq.* Hathaway Electric did not comply with the request, and Ms. Hollen filed suit against the company.

Hathaway Electric responded by filing an answer denying the allegations and adding a

---

1. The change in name occurred when the second company was incorporated. All court proceedings in the instant case concerned Hathaway Electric, Inc., which we shall refer to simply as Hathaway Electric for the purposes of this opinion.

2. The record is somewhat unclear on this point, as Mr. Hathaway also stated in a deposition that Ms. Hollen's employment was not continuous because she had once "quit" on a Friday afternoon and was "re-hired" the following Monday after some dispute.

counterclaim alleging that Ms. Hollen had divulged proprietary company information to other parties that had resulted in the loss of a potential contract for the company.[3] After deposing Ronald Hathaway and investigating the merits of the counterclaim, counsel for Ms. Hollen made a new settlement demand for $5,390, including attorney's fees. Eventually Hathaway Electric responded with an offer of $2,750. Finally, on the day of trial, September 28, 2001, Hathaway Electric offered to pay Ms. Hollen the $500 in vacation pay and $1500 in liquidated damages she had originally requested, and to drop its counterclaim against her. The court deferred a determination of reasonable attorney's fees until counsel for Ms. Hollen could submit a bill.

Subsequently, counsel for Ms. Hollen filed a Motion for Attorney's Fees seeking compensation at $200 per hour for 104 hours of work, for a total of $20,800. In a supporting brief, counsel explained that her normal hourly rate for non-contingent matters (matters for which she would be paid win or lose) was $130 per hour, but that she used a rate of $200 per hour in cases such as Ms. Hollen's, in which a loss would mean that counsel would not be paid at all. After a hearing, the circuit court issued a Supplemental Judgment Order on November 15, 2001, in which it awarded attorney's fees of $6,700, and specified this amount to be payment for 67 hours of work at $100 per hour. It is from this order that Ms. Hollen appeals. Because we find that the court erred in both the number of hours and the hourly rate it awarded, we reverse.

## II.

### STANDARD OF REVIEW

In prior cases we have noted that we review a circuit court's award of attorney's fees only for an abuse of discretion. " ' "[T]he trial [court] . . . is vested with a wide discretion in determining the amount

of . . . court costs and counsel fees, [sic] and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." Syllabus point 3, [in part,] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959).' Syl. Pt. 2, [in part,] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982) [(per curiam)]." Syllabus point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993).

Syl. pt. 3, *Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999). However, as in all cases, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Furthermore, the lower court's discretion is not without limit.

Ordinarily, when a circuit court is afforded discretion in making a decision, this Court accords great deference to the lower court's determination. However, when we find that the lower court has abused its discretion, we will not hesitate to right the wrong that has been committed.

*Rollyson v. Jordan*, 205 W.Va. 368, 379, 518 S.E.2d 372, 383 (1999); *accord Gribben v. Kirk*, 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995). Or stated in another fashion: "We grant trial court judges wide latitude in conducting the business of their courts. However, this authority does not go unchecked, and a judge may not abuse the discretion granted him or her under our law." *Lipscomb v. Tucker County Com'n.*, 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999).

## III.

### DISCUSSION

Ms. Hollen makes two assignments of error. To paraphrase her somewhat, she first

---

**3.** Specifically, the company alleged that it was underbid by a competitor for a job at a car dealership because Ms. Hollen revealed to supplier A the prices supplier B was going to charge Hathaway Electric for supplies for the car dealership job. Apparently the company believed that this disclosure of the supplier B prices, to supplier A allowed supplier A to provide materials at a lower price to the competitor, allowing the competitor to underbid Hathaway Electric by $1,000.

argues that the lower court erred when it did not order payment for all 104 hours worked by her counsel. She then argues that the lower court erred when it reduced counsel's hourly rate from the requested $200 per hour to the rate of $100 per hour. While she couches this second argument in terms of the court misapplying the requisite factors from our relevant case law, she essentially argues that the court erred in reducing the rate. We address each argument in turn.

### A.

### Reduction of Hours

■ Counsel for Ms. Hollen submitted a Motion for Attorney's Fees that claimed she worked a total of 104 hours on the case, with thirty-some of those hours dedicated to the preparation of the Motion for Attorney Fees and arguments in support thereof. The lower court determined that counsel was not entitled to recover fees for time she spent preparing the fee petition and the legal arguments necessary to support it.

■ Ms. Hollen first directs our attention to the Wage Payment and Collection Act, W. Va.Code § 21–5–1 *et seq.*, permits the recovery of attorney's fees. The Act provides in pertinent part:

(a). Any person whose wages have not been paid in accord with this article ... may bring any legal action necessary to collect a claim under this article.

(b). The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant....

West Virginia Code § 21–5–12 (1975). Clearly the Legislature intended that prevailing workers could recover fees under the Act. As this Court has observed, the purpose of the fee shifting under the Act is that the opportunity to recovery attorney's fees makes it much more likely that the provisions of the Act will be enforced, and that those it seeks to aid will be able to benefit from its protections:

We feel that costs, including attorney fees, should be awarded to prevailing plaintiffs

as a matter of course in the absence of special circumstances which would render such an award unjust. Both the Wage Payment and Collection Act and our mechanics' lien statutes are designed to protect the laborer and act as an aid in the collection of compensation wrongfully withheld. Working people should not have to resort to lawsuits to collect wages they have earned. When, however, resort to such action is necessary, the Legislature has said that they are entitled to be made whole by the payment of wages, liquidated damages, and costs, including attorney fees. If the laborer were required to pay attorney fees out of an award intended to compensate him for services performed, the policy of these statutes would be frustrated.

*Farley v. Zapata Coal Corp.*, 167 W.Va. 630, 639, 281 S.E.2d 238, 244 (1981); *accord, Taylor v. Mutual Min., Inc.*, 209 W.Va. 32, 543 S.E.2d 313 (2000) *(per curiam)*. The Court went on to hold: "An employee who succeeds in enforcing a claim under W. Va.Code Chapter 21, article 5 should ordinarily recover costs, including reasonable attorney's fees unless special circumstances render such an award unjust." *Farley* at syl. pt. 3.

Turning now to the more specific issue of whether or not counsel for Ms. Hollen may claim the time she spent preparing her fee petition and the arguments in support thereof, we find guidance in an earlier opinion of this Court. In a case concerning a civil service reinstatement proceeding, this Court explained:

The federal courts have recognized that in civil rights cases attorneys can collect reasonable fees for services rendered in connection with the fee itself, including litigation of the issue of the right to or the reasonableness of the fee. *See, e.g., Gagne v. Maher, supra*[, 594 F.2d 336]; *Weisenberger v. Huecker, supra*[, 593 F.2d 49]; *Prandini v. National Tea Co., supra* [585 F.2d 47 (3d Cir.1978)].

*Orndorff v. W. Va. Dept. of Health*, 165 W.Va. 1, 8, 267 S.E.2d 430, 434 (1980). While this case is not a civil service or civil rights case, we feel the logic of *Orndorff* is analo-

gous to the case *sub judice*. If an attorney is put to the burden of proving the reasonableness of his or her fee, he or she obviously must expend time and effort making that proof. Were the attorney not to receive compensation for those hours, the net effect would be to reduce the attorney's hourly rate for all the hours worked on the case. The Court in *Orndorff* relied in part on the federal case of *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir.1978), in which the Third Circuit Court stated:

> Statutorily authorized fees are not paid out of the plaintiffs' recovery, and the attorney in seeking his fee is not acting in any sense adversely to the plaintiffs' interest. Hence, the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award. If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies. *See, e.g., Hughes v. Repko, supra,* [578 F.2d 483] at 489 (opinion of Seitz, C.J.), [at] 490 (Rosenn, J., concurring), [at] 491–492 & n. 5 (Garth, J., concurring). Indeed, courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee.

*Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir.1978) (citations omitted). *Accord, Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir.1998).

However, appellee calls our attention to another case, in which we upheld a circuit court's decision to deny compensation for time an attorney spent litigating the attorney's fee issue. In *Brown v. Thompson,* 192 W.Va. 412, 452 S.E.2d 728 (1994), counsel for Mr Thompson claimed 496 hours of work and a total of over $64,000 in fees for a civil rights case related to Mr. Thompson's allegedly poor treatment as an inmate in the Jefferson County Jail. Of those hours, counsel claimed 142 hours for work on the attorney's fee issue, including hours spent reconstructing time records, since counsel had not kept contemporaneous records.

The lower court reduced this fee to $30,000, specifically refusing to compensate counsel for "time expended in briefing and arguing the attorney fee issue." *Id.* 192 W.Va. at 415, 452 S.E.2d at 731. On appeal this Court affirmed, but the opinion does not contain a discussion of the propriety or impropriety of awarding compensation for time spent litigating the attorney's fee issue, nor does it cite any authority, pro or con, on this point. Moreover, Justice Cleckley wrote a concurrence specifically approving of this practice.

> I write separately only to point out that the time expended by an attorney for a prevailing civil rights plaintiff in pursuing and justifying a reasonable fee should ordinarily be compensated and included in the final lodestar award. Here, however, the circuit court apparently discounted the hours Mr. Carey spent litigating the fee because some of them included time spent reconstructing his hours in the case (since he did not keep contemporaneous records as he should have) and because what he sought was not reasonable.

*Id.* 192 W. Va. at 415–16, 452 S.E.2d at 731–32. (Cleckley, J., concurring) (footnotes omitted). Thus we feel that the majority opinion in *Brown* may be distinguished from the facts of this case, and does not present an impediment to the award of compensation for time spent preparing and defending a petition for attorney's fees. Accordingly, we must reverse the circuit court on this issue, and award counsel for Ms. Hollen the full 104 hours she claimed in her motion.

### B.

### Application of *Pitrolo* Standards

 Counsel for Ms. Hollen next argues that the lower court erred in its application

of our standards to determine the reasonableness of attorney's fees. This Court had held previously that:

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986).[4] The lower court addressed each of the factors when considering the petition for attorney's fees and determined that the rate of $200 per hour requested by counsel was excessive. The court paid special attention to factor (5) the customary fee, noting that the rate suggested by counsel was "a little more than customary in this area."

The judge explained that in his view, in that area of the state, a more customary fee would be $100 per hour for the type of work performed by Ms. Hollen's counsel. This Court has addressed this issue before in an employment discrimination case tried in McDowell County, where the losing side argued that the attorney's fees awarded to the winning side were in excess of the prevailing rate for the area. As this Court explained:

> Appellant employer argues that her charges exceed the hourly rate that would have been charged by competent lawyers in McDowell or Mercer Counties. But in this regard we note that the appellant employer is represented by a distinguished Charleston law firm, and we doubt that [employee's counsel's] hourly rates significantly exceed the hourly rates paid by the appellant.

*Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 82, 380 S.E.2d 238, 249 (1989). The instant matter was filed in Upshur County. Ms. Hollen's counsel is based in Morgantown and appellee's counsel in Clarksburg, both communities with significantly larger populations and a greater number and variety of attorneys than one might find in Upshur County.

One advantage for a client seeking counsel in a relatively larger community is the availability of a larger pool of legal talent, and a correspondingly greater variety of specializations. One disadvantage, however, is that the attorney from the larger community usually charges a higher hourly rate. While a rate enormously greater than the "local rate" would not stand, courts considering the reasonableness of attorney's fees should consider how common it is today for lawyers to travel from Charleston, or Clarksburg, or Huntington, or other cities to represent clients in other, smaller counties. As the Court noted in *Salyers:*

> [W]e agree with the appellant that a losing defendant cannot be saddled with attorneys' fees that are unreasonably large simply because the plaintiff chooses a lawyer from New York City or another urban area where overhead costs and prevailing hourly rates make the lawyer's customary and usual charges far above what equally competent West Virginia lawyers would charge. That, however, is not the situation in this case: [employee's counsel's] hourly rate was comparable—and perhaps even below—what a young partner in a major firm headquartered in Charleston would charge for a case conducted in southern West Virginia.

*Id.*, 181 W.Va. at 82, 380 S.E.2d at 249 (1989).

It is clear that the $130 rate charged by Ms. Hollen's counsel, based in Morgantown, is almost thirty percent greater than the

---

**4.** These standards were adopted from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The United States Supreme Court has also substantially adopted these standards. *See, Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

$100 rate that the circuit court believes a lawyer in Buckhannon or Weston might charge. However, in light of the greater mobility lawyers now enjoy in their practice, we do not believe this discrepancy is sufficient to render the $130 rate unreasonable under *Pitrolo*. Thus we conclude that the lower court erred when it awarded only $100 per hour to Ms. Hollen's counsel.[5]

Finally, this Court has held on several occasions that the right to recover reasonable attorney's fees in cases such as this extends beyond the initial trial below to encompass work performed in the pursuit of a necessary appeal. As the Court stated in *Salyers*, "In addition to the attorneys' fees awarded, Ms. Salyers is clearly entitled to attorneys' fees for services rendered on this appeal because she has substantially prevailed in this Court. Syl. pt. 2, *Orndorff*, [*v. W. Va. Dept. of Health*, 165 W.Va. 1, 267 S.E.2d 430 (1980)] *supra; Barnes v. Public Service Comm'n.*, 172 W.Va. 232, 304 S.E.2d 685 (1983)." *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 83, 380 S.E.2d 238, 250 (1989).

Therefore we remand this case to the lower court for a determination of the hours of work necessitated by this appeal, and an appropriate order awarding the same $130 per hour for the hours expended as a result of this appeal.

## IV.

## CONCLUSION

For the reasons stated, the order of the Circuit Court of Upshur County is reversed, and this case is remanded to the circuit court with directions to award Ms. Hollen attorney's fees for 104 hours at $130 per hour, to determine the reasonable number of hours spent in pursuit of this appeal, and to award an additional amount for that time, at the same rate of $130 per hour.

Reversed and remanded with directions.

Justice McGRAW concurs, in part, and dissents, in part, and files a separate opinion.

McGRAW, Justice, concurring, in part, and dissenting, in part:

I concur with that aspect of the majority opinion that gives Ms. Hollen's counsel credit for all of the hours that she submitted on this case. However, I must dissent from the majority's decision on the appropriate hourly rate. I believe the courts should have honored her contract with her client.

Therefore, I respectfully concur in part, and dissent in part, to the majority opinion.

---

**5.** Another argument made by Ms. Hollen is that the circuit court erred in not awarding a so-called "contingent hourly fee." As Ms. Hollen's counsel attempted to explain to the lower court, counsel normally charged one rate, $130 per hour. However, when a client was unable to guarantee payment, counsel would take the case on a contingency, but at a rate of $200 per hour. In other words, counsel charged $130 per hour when she was certain to be paid, win or lose, and $200 per hour, when payment would only come with a win, and a loss would mean no payment whatsoever. While the lower court rejected this notion, this Court has embraced the concept in an earlier case:

> We agree that when a plaintiff is litigating a case involving a significant issue of general application, where the likelihood of success is small and the economic value in terms either of money or of injunctive relief to the prevail-

ing plaintiff is small, it is appropriate for a court to consider those factors in awarding attorneys' fees and allow a contingency enhancement to a prevailing party.
*Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 82, 380 S.E.2d 238, 249 (1989). The Court went on to hold in syllabus point three of *Salyers*, in part, "The general factors outlined in Syllabus Point 4 *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986) should be considered to determine: (1) the reasonableness of both time expended and hourly rate charged; and, (2) the allowance and amount of a contingency enhancement." While we believe that a logical argument can be made for allowing such a "contingent hourly" fee in this case, we do not believe that the lower court's refusal to permit it constituted an abuse of discretion, under these circumstances.