558 S.E.2d 593

**Donna J. NAPIER, Anna Lee Trautwein and Jack Compton, Petitioners Below, Appellees,**

v.

**B.R. COMPTON and Tivis Compton (now deceased), Respondents Below, Appellant.**

No. 29007.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2001.

Decided Oct. 26, 2001.

---

James W. St Clair, St Clair & Levine, Huntington, for the Appellants.

W. Stephen Flesher, Flesher & Lewis, Huntington, for the Appellees.

PER CURIAM.

This appeal was filed by B.R. Compton, appellant/respondent below, (hereinafter referred to as "B.R."), from an order of the Circuit Court of Cabell County requiring certain monies and property be placed in a constructive trust for the benefit of the estate of Tivis Compton, deceased/respondent below (hereinafter referred to as "Tivis"). The beneficiaries of the estate of Tivis Compton are Donna J. Napier, Anna Lee Trautwein and Jack Compton, appellees/petitioners below (hereinafter referred to as "the Napiers") and B.R. Compton. Even though B.R. asserts numerous assignments of error before this Court, we deem it necessary to address only one issue: Tivis' competency when he conveyed certain assets. After reviewing the record and listening to the argument of the parties, we reverse the circuit court's decision and conclude that the Napiers failed to prove that the conveyances made by Tivis were invalid.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The parties in this case are siblings and the adult children of Tivis and Ella Compton.

The parties' mother died on November 12, 1991. This dispute centers around money and property belonging to Tivis that was conveyed after Ella Compton's death.

On January 10, 1994, Tivis executed an instrument giving his son B.R. a general power of attorney over his affairs.[1] Thereafter, on March 7, 1994, Tivis executed a deed conveying two parcels of real property, situate in Cabell County, to B.R. On February 13, 1995, Tivis executed a deed conveying several parcels of real property, situate in Cabell County, to Jack. In August of that same year, four annuities that had previously been purchased by Tivis, and which named each of his children as beneficiaries, were changed, and B.R. became the sole beneficiary of all four annuities. Subsequently, in late April and May of 1996, the four annuity contracts were surrendered. The proceeds thereof, $52,168.72, "were paid to Tivis or B.R. Compton." Additionally, by letter dated August 8, 1995, Tivis requested that the beneficiary for two additional annuities be changed from all four children to B.R.[2] Also in 1995, title to Tivis' 1993 Toyota Corolla was transferred to B.R. and his wife. On September 4, 1996, B.R. cashed two certificates of deposit, worth approximately $92,000 that were titled in the name of Tivis and Ella.[3]

On October 23, 1997, the Napiers filed a petition seeking an accounting of Tivis' property. On November 11, 1997, while the case was pending, Tivis died testate.[4] Tivis named Jack as the executor of his estate.[5] The circuit court, by order entered February 17, 1998, referred the case to a Fiduciary Commissioner for a hearing on the merits and a final report. After a period of discovery, evidentiary hearings were held. At the conclusion of the hearings, the Commissioner

---

1. A general power of attorney had previously been given to Anna on May 17, 1993. The power of attorney given to B.R. by Tivis revoked all previous powers of attorney.

2. In 1998, the company issuing the two annuities paid the proceeds of $94,502.93, to B.R.

3. On December 20, 1994, Tivis made a gift of $10,000 to each of his four children and to the

wives of Jack and B.R. This money is not involved in the resolution of this case.

4. Tivis was 87 years old at the time of his death.

5. Tivis' will distributed his estate as follows: 31% to Jack, 25% to B.R., 22% to Anna, and 22% to Donna.

submitted a report and recommended decision on March 21, 2000. The Commissioner recommended "that B.R. Compton and Jack Compton hold the real and personal property transferred to them from the assets of Tivis Compton, subsequent to the death of Ella Compton, as constructive trustees for the benefit of the estate of Tivis Compton[.]"[6] By order entered August 15, 2000, the circuit court adopted the report and recommended decision of the Commissioner. It is from this order that B.R. now appeals.

## II.

### STANDARD OF REVIEW

▆ This appeal requires a review of the findings of fact and conclusions of law recommended by a special commissioner which were adopted by the circuit court. Our standard of review in this instance is the same as that used when examining challenges to a decision of the circuit court held after a bench trial. *See* W. Va. R. Civ. P. 52(a) ("The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court.").[7]

In reviewing challenges to the findings and conclusions [found by a special commissioner that were adopted by the circuit court], a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 1, *Public Citizen, Inc. v. First Nat'l. Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996). *Accord Province v. Province*, 196 W.Va. 473, 481, 473 S.E.2d 894, 902 (1996) ("Rulings of a special commissioner involving a mixture of law and fact are reviewed under an abuse of discretion standard. Ordinarily, this would include the rulings excluding evidence. However, the extent to which the ruling turns on materiality or interpretation of our law, the standard of appellate review is plenary." (citations omitted)). *See also Gottlieb v. Barry*, 43 F.3d 474, 486–87 (10th Cir.1994) (discussing standard of review applicable to report of special master); *Williams v. Lane*, 851 F.2d 867, 884–85 (7th Cir.1988) (same).

## III.

### DISCUSSION

Although B.R. raised a number of assignments of error, we need address only one of these issues in order to dispose of this case. B.R. contends that the Napiers failed to show Tivis' mental status on each occasion that B.R. received real and personal property from Tivis. Therefore, B.R. argues that the Napiers failed to meet their burden of proof by showing through a preponderance of the evidence, that the transfers were improper. In his brief, B.R. cites to a number of cases by this Court involving wills and testamentary transfers to support his contention. However, we do not believe that those cases control the outcome of this appeal.

Our decision in *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979), provides the proper context in which the facts of this case are to be viewed. In *Friend*, the defendant held a general power of attorney for the decedent, Manassah Judy. While Mr. Judy was alive, the defendant opened joint checking and savings accounts, with rights of survivorship, for the defendant and Mr. Judy. Shortly after opening the accounts, the defendant placed $30,000 of Mr. Judy's money in the accounts. After Mr.

---

6. The Commissioner gave the following as the value of the assets in question:

   From the assets of decedent Jack received real property worth approximately $300,000.00 and a $12,000.00 certificate of deposit. B.R. received property worth approximately $300,000.00, a 1993 Toyota Corolla automobile, proceeds from certificates of deposit of approximately $100,000.00 ..., and annuity proceeds of $146,671.65.

7. *See also Anderson v. Property Developers, Inc.*, 555 F.2d 648, 651 (8th Cir.1977) ("The special master's findings were adopted by the trial court and became, therefore, part of his findings of fact. They may not be disturbed on appeal unless they are clearly erroneous." (citations omitted)).

Judy died, the bank holding the accounts filed a declaratory judgment action seeking to determine whether to pay the money in the accounts to the defendant or to Mr. Judy's estate. The trial court ruled that the money should go to the defendant because the accounts were created with survivorship rights. Beneficiaries under Mr. Judy's will filed an appeal with this Court. We reversed the trial court. In doing so, we set out the principles that are applicable when a person has a power of attorney for another.

We noted in *Friend* that "[a] power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent." *Friend*, 162 W.Va. at 928, 253 S.E.2d at 530.[8] *Friend* further stated:

> A corollary to the fiduciary principle is the rule that a presumption of fraud arises where the fiduciary is shown to have obtained any benefit from the fiduciary relationship, as stated in 37 Am.Jur.2d Fraud and Deceits § 441:
>
>> "Thus, if in a transaction between parties who stand in a relationship of trust and confidence, the party in whom the confidence is reposed obtains an apparent advantage over the other, he is presumed to have obtained that advantage fraudulently; and if he seeks to support the transaction, he must assume the burden of proof that he has taken no advantage of his influence or knowledge and that the arrangement is fair and conscientious. . . .

*Friend*, 162 W.Va. at 929, 253 S.E.2d at 530 (additional citations omitted). We concluded in *Friend* that because of the fiduciary relationship between the defendant and Mr. Judy, a presumption of fraud arose with respect to placing Mr. Judy's money in the joint accounts, and that the defendant failed to prove that the money was a bona fide gift.

■ Pursuant to *Friend*, the proper context in which to view the asset conveyances is that of a fiduciary relationship between B.R. and Tivis. B.R. held a general power of attorney for Tivis and, therefore, under *Friend* a fiduciary relationship existed. "The fiduciary duty is '[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law[.]' " *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 435, 504 S.E.2d 893, 898 (1998) (quoting Black's Law Dictionary 625 (6th ed.1990)).

■ The evidence at the hearing below established that during the fiduciary relationship, B.R. obtained from Tivis property worth approximately $300,000.00, a 1993 Toyota Corolla automobile, proceeds from certificates of deposit of approximately $100,000.00, and annuity proceeds of $146,671.65. Pursuant to *Friend*, this evidence raises a presumption of fraud. Thus, the burden shifts to B.R. to present evidence to overcome the presumption.[9] *See* Syl. pt. 10, *Work v. Rogerson*, 152 W.Va. 169, 160 S.E.2d 159 (1968) ("Where a fiduciary relationship exists and there is an indication of fraud a presumption of fraud arises and the burden of going forward with the evidence rests upon the fiduciary to establish the honesty of the transaction."); Syl. pt. 2, in part, *Atkinson v. Jones*, 110 W.Va. 463, 158 S.E. 650 (1931) ("[I]n a case where a fiduciary relationship exists and an inference of fraud arises, the burden of proof is then on the alleged feasor to establish the honesty of the transaction."). *See also Marshall v. Marshall*, 166 W.Va. 304, 307, 273 S.E.2d 360, 362 (1980) ("[T]he law requires that one who receives property from another with whom he has a confidential relationship has the burden of showing that the transfer was fair and made with the utmost good faith."). In our review of the

---

8. In Syllabus point 1 of *Sutherland v. Guthrie*, 86 W.Va. 208, 103 S.E. 298 (1920), this Court articulated the following standard of conduct for an agent:

> In the conduct of his principal's business an agent is held to the utmost good faith, and will not be allowed to use his principal's property for his own advantage, or to derive secret profits or advantages to himself by reason of

the relation of principal and agent existing between him and his principal.

9. As previously noted, one son, Jack, obtained property worth over $300,000.00 from Tivis. Jack, however, has not contested the special commissioner's finding that this property was obtained improperly.

evidence we find that B.R. met his burden of rebutting the presumption of fraud.

For example, the most compelling rebuttal of fraud is the specific finding made by the Commissioner that "[t]here appear to have been no significant formal actions taken by B.R., as attorney-in-fact for decedent, acting under the power of attorney executed by decedent on January 10, 1994." This finding was critical. It demonstrated that the evidence established that B.R. did nothing improper in causing Tivis to convey monies and property to him. Once this finding was made by the Commissioner, the Napiers were required to show by a preponderance of the evidence that B.R. somehow unlawfully obtained the monies and property from Tivis as "the burden of persuasion never shifts from the complainant to the [defendant]." *Shepherdstown Volunteer Fire Dep't. v. State ex rel. State of West Virginia Human Rights Comm'n*, 172 W.Va. 627, 637, 309 S.E.2d 342, 352 (1983).

The Napiers presented evidence to show that during the period Tivis conveyed the assets, 1994 to 1996, he *periodically* demonstrated signs of mental impairment due to age. There was evidence that in January of 1996, Tivis' physician prescribed a drug for him called Cognex. Cognex is used to treat senility and degenerative dementia. However, this evidence, without more, was insufficient to set aside the conveyances. The Napiers presented no evidence proving that Tivis was totally or even partially incompetent during the period in question. Tivis' physician, whose deposition was presented to the Commissioner, *would not* opine that Tivis was incompetent during the critical time period. At best, the doctor's deposition testimony concluded that Tivis had occasional forgetfulness. Forgetfulness does not equal mental incompetence. Moreover, our case law does not support setting aside conveyances because of occasional forgetfulness.

### IV.

### CONCLUSION

We conclude that the Napiers failed to prove by a preponderance of the evidence that Tivis' conveyances of assets to B.R. were unlawful. We, therefore, reverse the judgment of the circuit court, order that a final judgment be entered in favor of B.R. and further order that the case be dismissed.

Reversed and Remanded.