664 S.E.2d 184

David R. DODD, David E. Dodd, and Diann D. Martin, and other similarly situated minority shareholders of Potomac Riverside Farm, Inc., Plaintiffs Below, Appellants,

v.

POTOMAC RIVERSIDE FARM, INC., Logan D. Wannamaker, Marjorie Lee Wannamaker, National City Bank, Trustee of Voting Trust Agreement of Potomac Riverside Farm, Inc., and Trustee of Edwin D. Dodd Trust, Sarah D. Kauffman, as President of Potomac Riverside Farm, Inc., Defendants Below, Appellees.

No. 33501.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 2008.

Decided June 13, 2008.

Webster J. Arceneaux, III, Lewis, Glasser, Casey & Rollins, Charleston, WV, for Appellants.

William J. Powell, Richard F. Shearer, Jackson Kelly, P.L.L.C., Martinsburg, WV, for Appellee, Sarah D. Kaufmann.

Tammy Mitchell McWilliams, Trump & Trump, L.C., for Appellees, Potomac Riverside Farm, Inc., Logan D. Wannamaker, Majorie Lee Wannamaker and National City Bank.

PER CURIAM:

In the instant matter, appellants David R. Dodd, David E. Dodd and Diann D. Martin [hereinafter, collectively "appellants"], seek reversal of two orders entered by the Circuit Court of Berkeley County in this minority shareholder dissent action instituted pursuant to the provisions of our prior dissenting shareholder rights statute, W. Va.Code § 31–1–123 (1974).[1] The first, entered April 6, 2006, established the fair value of the appellants' shares of stock in appellee Potomac Riverside Farm, Inc., a closely held corporation. The second, entered October 6, 2006, set forth the interest to which appellants were entitled on the value of their shares of corporate stock and assessed certain costs against the appellees, while denying appellees' motion for attorney fees.

On appeal, appellants argue that the circuit court erred in its valuation of their shares of stock and made an unfair and inequitable interest award. Appellee Sarah Kaufman responds that appellants' challenge to the circuit court's valuation of the appellants' shares of stock is untimely and, even if timely, did not constitute an abuse of discretion. Further, she argues that the circuit court's interest determination and award were fair and reasonable under the circumstances. In addition to arguing points similar and consistent with those argued by Sarah Kaufman, the remaining appellees assert a cross-assignment of error challenging the circuit court's assessment of costs incurred for the special commissioner appointed herein against the appellee corporation and denying appellees' request for attorney's fees pursuant to Rule 68(c) of the *West Virginia Rules of Civil Procedure*. Having thoroughly considered the arguments of the parties, the record below and applicable precedent, we affirm, in part, and reverse, in part, the Circuit Court of Berkeley County for the reasons set forth herein.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee Potomac Riverside Farm, Inc. [hereinafter "PRF"] is a closely-held corporation formed in 1965 having three siblings, David R. Dodd, Edwin Dodd and Sarah Kaufman as its primary shareholders. At its inception, PRF issued 1,070 shares of stock with the siblings each owning approximately one-third of the same.[2] PRF's primary assets consist of two farms totaling 360 acres of farm land located in Berkeley County, West Virginia and which front approximately 1.4 miles of the Potomac River. This land had been in the Dodd family's possession for seven generations.

Prior to his death on January 2, 2001, Edwin D. Dodd purchased the rights to vote Sarah Kaufman's 344 shares of PRF for $50,000 and created a voting trust for the purpose of voting both his 352 shares of PRF

---

**1.** The parties agree that this statute, which was repealed in 2002, is applicable to the instant proceeding as it was in effect at the time the instant proceeding was initiated. Relevant provisions of this statute are set forth *infra*.

**2.** It appears that David R. Dodd possessed 357 shares of PRF stock, Edwin D. Dodd 352 shares and Sarah Kaufman 344 Shares. It is unclear from the record who owned the remaining seventeen shares although it has been represented to this Court that no sibling owned a majority of the shares and all shareholders were related by blood or marriage. At some point, appellant David R. Dodd conveyed 28 shares of his stock to his son, appellant David E. Dodd, and another 20 shares to his daughter, appellant Diann D. Martin. As a result, David R. Dodd reduced the number of shares he personally owned to 312.

stock and his sister's 344 shares of PRF stock. Appellee National City Bank was named the trustee of the voting trust and also serves as the representative of the Estate of Edwin D. Dodd and trustee for the Edwin D. Dodd Trust. Thus, National City Bank controls the votes for the majority of shares of PRF stock and also controls Quail Creek Farm, property owned by Edwin D. Dodd prior to his death and which is located adjacent to PRF's property.

In early August 2001, the PRF Board of Directors[3] recommended the sale of essentially all of PRF's assets, specifically the 360 acres of farm land and any improvements thereon, and noticed a special meeting of stockholders for August 31, 2001. By letter dated August 30, 2001, Appellants exercised their rights under W.Va.Code § 31–1–123(a) (1974)[4] to dissent from the proposed corporate actions. The proposed sale of PRF's assets was approved at the August 31, 2001, special meeting. Thereafter, the appellants made written demands for payment the fair value of their shares in accordance with W. Va.Code § 31–1–123(a).

On March 21, 2002, an entity known as WV Hunter, LLC, offered to purchase Quail Creek Farm and the PRF properties for a total of $5,000,000. Of that amount, $1,399,900 was allocated for the purchase of the PRF properties.[5] Appellants thereafter, on July 8, 2002, instituted this action seeking to prevent the sale and recorded a *lis pendens* against the PRF properties. The contract for sale to WV Hunter, LLC, was signed on July 31, 2003, having previously been ratified by the PRF Board of Directors. By order effective January 31, 2003,[6] the circuit court ordered the removal and expungement of the *lis pendens* finding appellants, as shareholders, had no legal interest in property titled in the corporation's name. In this order, the circuit court also held appellants' sole remedy would be to seek money damages and directed that any sale proceeds be placed in a constructive trust pending further order of the court. The sale of PRF's properties to WV Hunter, LLC was finalized in June 2003, and PRF made a tender offer, pursuant to W. Va.Code § 31–1–123(c),[7] to appellants of $835.51 per share[8] for each of their combined 357 shares[9] on June 27, 2003.

3. Appellee Sarah Kaufman was president of PRF at all relevant times. Appellees Logan D. Wannamaker and Marjorie Lee Wannamaker were members of the PRF Board of Directors.

4. Pertinent provisions of W.Va.Code § 31–1–123(a) provide:

Any shareholder electing to exercise his right to dissent, pursuant to section one hundred twenty-two of this article, shall file with the corporation, prior to or at the meeting of shareholders at which such proposed corporate action is submitted to vote, a written objection to such proposed corporate action. If such proposed corporate action be approved by the required vote and such shareholder shall not have voted in favor thereof, such shareholder may ... make written demand on the corporation, ..., for payment of the fair value of such shareholder's shares, and if such proposed corporate action is effected, such corporation shall pay to such shareholder, upon surrender of the certificate or certificates representing such shares, the fair value as of the day prior to the date on which the vote was taken approving the proposed corporate action, excluding any appreciation or depreciation in anticipation of such corporate action .... Any shareholder making such demand shall thereafter be entitled only to payment as in this section provided and shall not be enti-

tled to vote or to exercise any other rights of a shareholder.

5. A finding of fact was made below that the PRF properties had appraised for $1,120,000 in 1997.

6. This order was actually signed by the circuit court on February 24, 2003 and entered by the circuit clerk on February 25, 2003. However, the terms of the order itself indicate that it was to be effective as of January 31, 2003, the date on which the corresponding hearing was held regardless of the date it was entered by the circuit clerk.

7. West Virginia Code § 31–1–123(c) provides, in pertinent part: "[w]ithin ten days after such corporate action is effected, the corporation, ..., shall give written notice thereof to each dissenting shareholder who has made demand as herein provided, and shall make a written offer to each shareholder to pay for such shares at a specified price deemed by such corporation to be fair value thereon."

8. This amount was based upon the price allocated to the PRF properties in the sale to WV Hunter, LLC, *i.e.*, $1,399,900.

9. Appellants withheld 3 shares of stock from their notice of dissent for voting purposes.

Appellants rejected the tender offer as not being a fair and reasonable value of their shares and the instant proceeding was continued to determine the fair value of the shares. PRF's tender offer was followed by two offers of judgment made pursuant to Rule 68 of the *West Virginia Rules of Civil Procedure.* The first, made on February 10, 2005, was for $376,500. The second, made on February 18, 2005, was for $414,500. Subsequent to the appellants rejecting both offers of judgment, the circuit court appointed Oscar M. Bean as special commissioner to determine the fair value of the dissenting stockholders' shares of PRF stock as of August 30, 2001, the date they filed their notice of dissent.

Commissioner Bean held two days of hearings in October 2005. The parties, having agreed that the net asset valuation method[10] should be used to determine the property value as of August 30, 2001, presented evidence regarding the same. Appellants offered the testimony of Norman McCray who opined that PRF's property had a value of $2,082,000 as of July 1, 2002, or $2,024,745 on August 30, 2001. Appellees presented the testimony of Terrence W. McPherson who opined that the PRF property had a value of $1,250,000 on August 30, 2001 and increased to $1,399,900 by June 12, 2003, when it was sold. Upon hearing all evidence and finding both appraisals to be imperfect, Commissioner Bean found the McPherson appraisal to be more persuasive. In so doing, he noted that the McCray appraisal was unpersuasive because it did not satisfactorily account for the

flood plain and a railroad easement. Additionally, the appraisal was performed using a listing that was not comparable.

Commissioner Bean ultimately submitted his recommendations to the circuit court wherein he valued the subject real estate at $1,400,000. After accounting for the corporation's minimal other assets and subtracting its liabilities, Commissioner Bean recommended that the fair value of a share of PRF stock be set at $952.37.[11] Though not requested to do so by the circuit court's referral order, Commissioner Bean also recommended that dissenting shareholders be awarded interest at the rate of eight percent per annum from the date of the approval vote and that the costs of the special commissioner proceedings be assessed against PRF.[12] By order dated April 6, 2006, the circuit court adopted Commissioner Bean's recommendation regarding the fair value of PRF's stock and rejected his interest and cost assessment recommendations after addressing the parties' objections to each.

Subsequently, the circuit court entered a second order on October 6, 2006, addressing the interest and cost issues. Recognizing that the applicable statute allowed the court to award such interest as the court deemed fair and equitable,[13] the circuit court awarded simple interest to be calculated in the following manner: 1) no interest on $835.51 per share[14] for the time period from August 30, 2001, through June 12, 2003, the date upon which the sale of PRF's property was finalized; 2) 10% simple interest on $116.86 per share[15] for the time period between August

---

10. Under the net value asset method of valuation, the corporation's value was to be determined by ascertaining the value of its assets, primarily the 360 acres of farm land, less its liabilities as of August 30, 2001, the day appellants' notice of dissent was issued. That value would then be allocated evenly between the 1070 shares of PRF stock.

11. Finding PRF had additional assets of $15,234 and liabilities of $396,196, Commissioner Bean determined PRF's net assets to be $1,019,038 as of August 30, 2001, resulting in a fair value of $952.37 for each of PRF's 1070 individual shares of stock.

12. The determination to assess costs against PRF was based upon a finding that appellants had not acted in bad faith.

13. West Virginia Code § 31-1-123(e) provides, in pertinent part, "The judgment [determining the fair value of a dissenting shareholder's stock] shall include an allowance for interest at such rate as the court may find to be fair and equitable in all the circumstances, from the date on which the vote was taken on the proposed corporate action to the date of payment."

14. This amount corresponds to PRF's initial tender offer.

15. This amount corresponds to the difference between the tender offer and the judicially determined fair value of the shares.

30, 2001, and the entry of the order assessing interest; 3) 1.67% simple interest[16] on $835.51 per share from June 13, 2003 and the entry of the order assessing interest; and 4) the statutory rate of post-judgment interest pursuant to W. Va.Code § 56–6–31 (2006), subsequent to the entry of the order assessing interest. Finding appellants did not act arbitrarily or vexatiously in the underlying proceedings and made colorable arguments in good faith, the circuit court assessed the costs associated with the special commissioner's proceeding against PRF.[17] In its October 6, 2006, order, the circuit court also denied the appellees' request for attorney's fees and costs due to the appellants' failure to accept the prior offers of judgment finding that the appellees were not entitled to the same having decreased their per share valuation during the special commissioner's proceeding. It is from this October 6, 2006, order that the instant appeal is taken.

## II.

### STANDARD OF REVIEW

Herein we are presented with challenges to the circuit court's determination of the fair value of the dissenting shareholders' shares of PRF stock, to the circuit court's interest award and to the circuit court's denial of appellees' request for attorney's fees. With respect to the first issue, we are cognizant that its resolution involves not only the circuit court's own findings, but those recommended by the special commissioner and adopted by the circuit court. When reviewing a circuit court order with adopts findings of fact and conclusions of law recommended by a special commissioner, we utilize the same standard of review as we do when examining challenges to a circuit court's decision after a bench trial. *Napier v. Compton,*

210 W.Va. 594, 597, 558 S.E.2d 593, 597 (2001) (*per curiam*).

As such,

"In reviewing challenges to the findings and conclusions [found by a special commissioner that were adopted by the circuit court], a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. Pt. 1, *Napier v. Compton,* 210 W.Va. 594, 558 S.E.2d 593(2001) (*per curiam*). *Accord Province v. Province,* 196 W.Va. 473, 481, 473 S.E.2d 894, 902 (1996) ("Rulings of a special commissioner involving a mixture of law and fact are reviewed under an abuse of discretion standard.... However, the extent to which the ruling turns on materiality or interpretation of our law, the standard of appellate review is plenary." (citations omitted)). *See also, Balsamides v. Protameen Chemicals, Inc.,* 160 N.J. 352, 734 A.2d 721, 729–30 (1999) (finding that in a stock valuation proceeding the "findings of the trial court are critical as the valuation of closely-held corporations is inherently fact based.... Accordingly, great deference is due a trial court's finding which will not be disturbed unless it is clearly erroneous or shows an abuse of discretion." (internal quotations and citations omitted)); *Davis v. Alpha Packaging Industries, Inc.,* 267 A.D.2d 384, 700 N.Y.S.2d 220, 221 (N.Y.App.Div. 1999) ("With regard to valuation, the determination of a fact-finder as to the value of a business, if it is within the range of testimony presented, will not be disturbed on appeal where valuation of the business rested pri-

16. This interest rate corresponds to the interest PRF earned on the sale proceeds during the pendency of the shareholder dissent proceeding.

17. Pursuant to the relevant provisions of W.Va. Code § 31–1–123(e), "[t]he costs and expenses of any such [appraisal] proceeding shall be determined by the court and shall be assessed against

the corporation, but all or any part of such costs and expenses may be apportioned and assessed as the court may deem equitable against any or all of the dissenting shareholders ... if the court shall find that the action of such shareholders in failing to accept such [tender] offer was arbitrary or vexatious or not in good faith."

marily on the credibility of the witnesses and their valuation techniques.").

A similar standard applies to our review of the circuit court's interest determinations. "In reviewing a circuit court's award of prejudgment interest, we usually apply an abuse of discretion standard. When, however, a circuit court's award of prejudgment interest hinges, in part, on an interpretation of our decisional or statutory law, we review *de novo* that portion of the analysis." Syl. Pt. 2, *Hensley v. West Virginia Dept. of Health & Human Resources*, 203 W.Va. 456, 508 S.E.2d 616 (1998). Further,

> "[T]he trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees, and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." Syllabus point 3, [in part,] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959). Syl. Pt. 2, [in part,] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982) [(per curiam)]. Syllabus point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993). Syl. pt. 3, *Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999). Syllabus point 1, *Hollen v. Hathaway Electric, Inc.*, 213 W.Va. 667, 584 S.E.2d 523 (2003) (per curiam).

Syl. Pt. 3, *Shafer v. Kings Tire Service, Inc.*, 215 W.Va. 169, 597 S.E.2d 302 (2004). Cognizant of these standards, we turn to the substantive issues presented.

## III.

## DISCUSSION

### A.

### *Fair Value Determination*

Out the outset, we may quickly dispose of appellees' argument that the instant appeal of the circuit court's fair value determination of the PRF stock is untimely. Appellees argue that the circuit court's April 6, 2006, order setting the value of the shares of PRF stock "approximates a final order in its

nature and effect" and, thus, was required to be appealed with four months of its entry pursuant to Rule 3(a) of the *Rules of Appellant Procedure*. *See*, Syl. Pt. 2, *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991) (holding that the absence of language in an order indicating that there is not just reason for delay pursuant to Rule 54(b) of the *West Virginia Rules of Civil Procedure* does not bar appeal of the order so long as this Court can determine that the circuit court's ruling "approximates a final order in its nature and effect."). However, simply because an order *may* be appealed pursuant to *Durm* does not require that it *must* be appealed prior to entry of the final order in the case. *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 550, 584 S.E.2d 176, 184 (2003) ("although we have *permitted* a party to take a petition for appeal from a *Durm*-type order, we have never *required* such an appeal." (emphasis in original)). Accordingly, we reject appellees' timeliness argument as without merit.

Appellants challenge the circuit court's valuation of PRF stock on the basis that the special commissioner abused his discretion by relying on the McPherson appraisal claiming it was error-ridden in its treatment of comparables. The appellees, by contrast, argue that the special commissioner adequately explained his reasoning which was based, in part, on credibility determinations and no evidence has been presented to deem his ultimate resolution clearly erroneous. We agree with the Appellees on this issue.

As noted above, we review the valuation determination for an abuse of discretion and will overturn factual findings only if the same are clearly erroneous. *See*, Syl. Pt. 1, *Napier*, 210 W.Va. 594, 558 S.E.2d 593. Our review of the record herein reveals that the special commissioner weighed the competing appraisals, finding each to be imperfect. However, in light of the evidence presented to him, he found the McPherson appraisal to be most convincing and more probative. Thus, he relied upon the same, in part, when valuing the PRF property at $1,400,000.[18] In

---

18. It bears repeating that the McPherson ap- praisal valued the PRF property at $1,250,000 on

adopting the special commissioner's valuation, the circuit court explained both the special commissioner's reasoning and its own in accepting the recommendation. Finding neither an abuse of discretion or clearly erroneous finding by either the special commissioner or the circuit court, we affirm the valuation determination. The PRF stock was appropriately valued at $952.37 per share.

## B.

### Interest Award

Having found the circuit court's valuation decision to be proper, we turn next to its interest award. West Virginia Code § 31–1–123(e) directs the award of interest in an amount the court deems fair and equitable in all the circumstances. Appellants maintain that the circuit court's interest award was both unfair and inequitable because the circuit court awarded varying low interest rates and failed to direct that the interest be compounded. Appellees counter that under all the circumstances, particularly taking into account appellants' actions in attempting to thwart the sale of PRF property, the interest award was appropriate. While we disagree with the interest rates set by the circuit court, we agree that any interest award should be simple, not compound, interest.

As the award of interest herein is statutorily authorized, our review of the same is *de novo. See* Syl. Pt. 2, *Hensley,* 203 W.Va. 456, 508 S.E.2d 616 (1998). Significantly, W. Va.Code § 31–1–123(e) did not specify the interest rate to be awarded, only that it be fair and equitable in all the circumstances.[19] It appears the circuit court's interest determination was multi-fold with varying rates corresponding to the date on which the sale of the PRF property was authorized, the date on which the sale was finalized and the date of the order determin-

ing the fair value of a share of PRF stock. Additionally, the rate set varied according to what funds appellants could have had at the various junctures and the amount earned by PRF on the sale proceeds during the pendency of the legal proceedings. In view of all the circumstances, we agree with the appellants that the circuit court's multidimensional interest award is unfair and inequitable. As noted by the Delaware Supreme Court in *Universal City Studios, Incorporated v. Francis I. duPont & Company,* 334 A.2d 216, 222 (Del.1975), the purpose of an interest award in a shareholder dissent appraisal proceeding is to fairly compensate the dissenting shareholders for their inability to utilize their money during the period in question. With this purpose in mind, we believe that a flat six percent (6%) interest rate is fair and equitable in all the circumstances and in light of the fact that appellants presented no evidence below as to what a reasonably prudent investor may have obtained on similar funds. This rate adequately compensates appellants for the loss of use of their money while simultaneously recognizing the limited degree of success they achieved in this proceeding and their own conduct in attempting to prevent the sale of PRF property subsequent to the approval vote. The fair value of the PRF stock was determined to be $952.37, a mere fourteen percent (14%) increase from PRF's initial tender offer of $835.51.

Having found an interest rate of six percent (6%) on the fair value of the PRF shares is appropriate, we also find that the circuit court correctly ruled that any interest awarded should be simple interest. In syllabus point 4 of *Hensley v. West Virginia Dept. of Health & Human Resources,* 203 W.Va. 456, 508 S.E.2d 616 (1998), we held "[w]here there exists no statute or express written agreement establishing the type of

August 30, 2001, the relevant date herein. Thus, taking into account the other evidence presented, the special commissioner ultimately valued the property higher than the McPherson appraisal.

**19.** The questions regarding the appropriate interest to be awarded under W. Va.Code § 31–1–123(e) (1974) have been alleviated by the statutory scheme enacted to replace the prior stock-

holder dissent statutes. Under current law, "interest" as the term is used in the shareholder appraisal statutes is defined as "interest from the effective date of the corporate action until the date of payment, at the rate of interest on judgments in this state on the effective date of the corporate action." W.Va.Code § 31D–13–1301(5) (2002).

prejudgment interest as being compound, and in the absence of a recognized exception which would permit recovery of compound prejudgment interest, prejudgment interest is simple in kind." In is undisputed that the statute authorizing the award of interest in the instant action, W. Va.Code § 31–1–123(e), does not direct that any interest awarded thereunder be compound and appellants have not directed our attention to any recognized exception permitting recovery of compound interest in the absence of such statutory direction. Accordingly, we reject appellants' argument regarding compound interest as without merit and affirm the circuit court's ruling in this regard.

## C.

### Costs and Attorney's Fees

PRF asserts as a cross-assignment of error the circuit court's decision to assess the costs of the special commissioner's proceeding against PRF and denying its request for attorney's fees. According to PRF, appellants should have been required to pay all costs due to their failure to accept either offer of judgment made in February, 2005. PRF maintains that the fair value of each share as determined by the circuit court was less than the per share value of either offer of judgment,[20] thus triggering the award of costs against appellants under Rule 68(c). Appellant respond that not only is the award of costs statutorily required to be assessed against the corporation, but that PRF's invocation of Rule 68(c) is misplaced because the offers of judgment were not simply for the per share value of the PRF stock, but also included all attorney's fees and costs. Therefore, simply dividing the offers of judgment by the number of shares to determine the per share value of the offers is inappropriate.

As previously noted, the circuit court is vested with wide discretion in assessing costs of a proceeding. Syl. Pt. 3, *Shafer*, 215 W.Va. 169, 597 S.E.2d 302. In its October 6, 2006, order, the circuit court recognized that the statute governing this issue, W. Va.Code § 31–1–123(e), requires an assessment of costs against the corporation unless the dissenting shareholders are found to have acted arbitrarily, vexatiously, or not in good faith when rejecting the tender offer. Additionally, the circuit court found that PRF's offers of judgment did not increase the per share value of their offer and that PRF had actually *decreased* the per share value during the special commissioner's proceeding. In light of these specific findings by the circuit court, we cannot say that the circuit court abused its discretion in assessing the costs of the special commissioner's proceeding against PRF and in denying PRF's request. Accordingly, the portion of the circuit court's October 6, 2006, order regarding costs and attorney's fees is affirmed.

## IV.

## CONCLUSION

For the reasons set forth herein, we affirm the Circuit Court of Berkeley County's order ascertaining the fair value of PRF stock and assessing costs. We affirm, in part, and reverse, in part, the Circuit Court of Berkeley County's interest determination. We agree that any interest awarded should be simple interest, but disagree with the lower court's multidimensional interest award. Accordingly, we reverse that portion of the Circuit Court of Berkeley County's October 6, 2006, order setting prejudgment interest rates and remand this matter to the circuit court with directions to enter an order setting the prejudgment interest on the fair value of PRF stock at six percent (6%) simple interest.

Affirmed, in part, Reversed, in part, and Remanded with Directions.

---

**20.** The first offer of judgment, made on February 10, 2005, was for $376,5000 which corresponds to $1,029.42 per share. The second, made on February 18, 2005, was for $414,500 or $1,161.06 per share.