AMERICAN ETHANOL, INC., A NEVADA CORPORATION; AND AE BIOFUELS, INC., A NEVADA CORPORATION, APPELLANTS, *v.* CORDILLERA FUND, L.P., A TEXAS LIMITED PARTNERSHIP, RESPONDENT.

No. 54779

May 5, 2011                                   252 P.3d 663

---

*Holland & Hart LLP* and *Jeremy J. Nork* and *Ethan J. Birnberg*, Reno, for Appellants.

*McDonald Carano Wilson LLP* and *Craig A. Newby* and *William A.S. Magrath II*, Las Vegas, for Respondent.

Before CHERRY, GIBBONS and PICKERING, JJ.

## OPINION

By the Court, CHERRY, J.:

In this appeal, we examine the definition of "fair value" as prescribed by the stockholder right-to-dissent statutes. We adopt a flexible approach in determining fair value, whereby the district court should evaluate a number of relevant factors in determining fair value.

Furthermore, we determine who bears the burden of proving the fair value of a stockholder's corporate shares in a stockholder's right-to-dissent appraisal action. We conclude that in such an appraisal proceeding, both the dissenting stockholder and the corporation have the burden of proving their respective valuation conclusions by a preponderance of the evidence. In evaluating the fair value, even if neither party satisfies its burden, the district court ultimately must use its independent judgment to determine the fair value.

### FACTS

In 2006, respondent Cordillera Fund, L.P., purchased a total of 583,334 shares of series B convertible preferred stock in appellant American Ethanol, Inc., for $1,750,002, or $3 per share.[1] In July 2007, American Ethanol and appellant AE Biofuels, Inc., formalized a merger agreement, and American Ethanol notified its stockholders of their NRS Chapter 92A right to dissent. In response, Cordillera gave American Ethanol notice of its intent to dissent and demand payment for its total shares. The other American Ethanol

---

[1]Cordillera Fund originally purchased 250,000 shares of American Ethanol convertible preferred stock for $1,750,002 in September 2006. In February 2007, American Ethanol reduced the offering price to $3 per share and correspondingly issued to Cordillera an additional 333,334 shares. Thus, in total, Cordillera owned 583,334 shares of American Ethanol series B preferred stock at $3 per share.

stockholders approved the merger, and on December 7, 2007, the articles of merger were filed with the Nevada Secretary of State.

The following month, Cordillera sent appellants a demand for payment pursuant to NRS 92A.440. After appellants refused to tender payment, citing untimeliness, among other things, Cordillera filed a complaint for declaratory and injunctive relief in the district court. *See* NRS 92A.460. Specifically, Cordillera requested a declaration of its right to payment for its shares in American Ethanol, an injunction compelling appellants to comply with Nevada's dissenters' rights statutes, and reasonable attorney fees and costs. Appellants contested the timeliness of Cordillera's demand, and apparently, a secondary issue was also raised—the proper valuation of the shares.[2] The timeliness issue was heard first, and after a one-day trial, the jury found that Cordillera exercised its dissenter's right in a timely matter. Thus, the only remaining issue for the district court to determine was the fair value of Cordillera's shares of stock as of December 7, 2007, the date of the merger. *See generally* NRS 92A.490.

Neither Cordillera nor appellants provided an appraisal of the shares' fair value, and the district court directed appellants to either deliver payment or an offer for the "fair market value" of the shares plus accrued interest.[3] *See* NRS 92A.460; NRS 92A.470. The district court ordered that if the payment or the offer was not accepted by Cordillera, then Cordillera must notify appellants of its estimate of the shares' fair value no later than 30 days after compliance by appellants. *See* NRS 92A.480. The district court provided that if there remained a dispute between the parties concerning the fair value of shares, then the court would determine that value.

---

[2] As the issue was not raised, we express no comment on the propriety of conducting an NRS 92A.440 proceeding in conjunction with an NRS 92A.490 proceeding.

[3] Although an appraisal would have been advantageous, neither party had an obligation to provide an appraisal pursuant to NRS 92A.490(1). In addition, while it might have been effective for the district court to appoint an appraiser pursuant to NRS 92A.490(4), it was under no obligation to do so. During oral argument, appellants' counsel stated that appraising Cordillera's shares of stock would be an extraordinarily difficult endeavor because: (1) Cordillera owned preferred stock, not common stock; (2) American Ethanol stock was not trading on a stock exchange; and (3) Cordillera owned very few shares of stock in relation to the total amount of the outstanding stock. Appellant's counsel maintains that an appraiser was obtained by appellants, but that the appraiser could not provide an appraisal.

Also, NRS Chapter 92A's dissenters' payment is for the fair value of the shares; the district court misapplied the term "fair market value." "Fair market value" and "fair value" are two separate concepts. *See* 18A Am. Jur. 2d *Corporations* § 706 (2004) (fair value does not necessarily equate to market value); 18 C.J.S *Corporations* § 395 (2007) (market value is only one factor in determining value of shares).

Thereafter, appellants offered Cordillera $0.15 per share. Cordillera rejected the offer. Subsequently, Cordillera gave notice to appellants of its estimate of the fair value of the stock at $3 per share. The parties proceeded to trial because no agreement as to fair value could be reached.

At trial, Cordillera produced three Securities and Exchange Commission (SEC) documents to support its contention that the fair value of the stock on the merger date was $3 per share, including one that indicated that $3 per share was the offering price of the series B preferred stock as of the date of merger. Appellants provided testimony that the book value per share was representative of the fair value and thus, $0.15 per share was the appropriate payment owed.[4]

At the conclusion of the trial, the district court found that the preponderance of the evidence demonstrated that the offering price of American Ethanol stock was the most reliable showing of value, even though the offering price is not always or necessarily equivalent to the value of the stock. Moreover, the district court dismissed appellants' theory that the book value was representative of fair value in this case. Subsequently, the district court entered a judgment in favor of Cordillera and against appellants, jointly and severally, determining that a preponderance of the evidence established that the fair value of Cordillera's shares of stock at the time of the corporate merger was $1,750,002, or $3 per share. The total judgment was for $1,918,901.17, which represented the principal sum of $1,750,002, plus prejudgment interest of $168,899.17. Appellants appealed.

On appeal, appellants contend that the district court abused its discretion in determining the fair value of the shares because Cordillera failed to meet its burden of proof.

## DISCUSSION

NRS 92A.300-.500 governs the rights of stockholders who dissent from certain corporate actions, such as mergers. *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 10, 62 P.3d 720, 726 (2003). These statutes were "patterned after, or are identical to, the provisions of the 1984 Model Business Corporation Act." *Id.* "The Model Act and Nevada's statutes are designed to facilitate business mergers, while protecting minority shareholders from being unfairly impacted by the majority shareholders' decision to approve a merger." *Id.* at 10, 62 P.3d at 726-27. Thus, minority stock-

---

[4]"Generally speaking book value of stock represents the difference between the assets and liabilities of a corporation—that is the value of the net assets." *Chadwick v. Cross, Abbott Company*, 205 A.2d 416, 419 (Vt. 1964); *see* J.H. Crabb, Annotation, *Meaning of "Book Value" of Corporate Stock*, 51 A.L.R.2d 606 (1957).

holders who dissent from a corporate action such as a merger are entitled to receive payment for the fair value of their shares. NRS 92A.380(1)(a).

*Fair value*

"Fair value" is not explicitly defined in the statutes. The relevant version of NRS 92A.320 states merely that fair value is "the value of the shares immediately before the effectuation of the corporate action to which [the stockholder] objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." NRS 92A.320 (2008);[5] *see* 3 Model Bus. Corp. Act Ann. § 13.01 (4th ed. 2008). Thus, as noted in the official comment to the 1984 Model Business Corporation Act, the statute leaves it to the courts to work out "the details by which 'fair value' is to be determined within the broad outlines of the definition." 3 Model Bus. Corp. Act Ann. § 13.01 cmt. 3 (3d ed. 1984).

Determining fair value, "in actual practice . . . is not easy." *Steiner Corp. v. Benninghoff*, 5 F. Supp. 2d 1117, 1123 (D. Nev. 1998) (applying Nevada law). "One of the first questions that must be addressed in any valuation study is what 'standard of value' the valuation study is meant to determine." *Id.* In Nevada, "that standard is set by statute—the Nevada dissenters' rights statutes direct that dissenting shareholders should receive the 'fair value' of their shares." *Id.*; *see* NRS 92A.320; NRS 92A.380. "Unfortunately, the statutes do not elaborate on what 'fair value' means, or on what should be considered in order to arrive at fair value." *Steiner*, 5 F. Supp. 2d at 1123. Lacking explicit statutory directive, courts typically consider "all relevant factors" when valuing dissenting stockholders' shares. Ferdinand S. Tinio, Annotation, *Valuation of Stock of Dissenting Stockholders in Case of Consolidation or Merger of Corporation, Sale of Its Assets, or the Like*, 48 A.L.R.3d 430 § 3(a) (1973).

---

[5]We rely on the 2008 version of NRS 92A.320, as it was in effect during the pendency of the litigation.

In 2009, the Legislature amended NRS 92A.320. 2009 Nev. Stat., ch. 361, § 64, at 1720-21. However, the amended statute does not provide much additional guidance in determining fair value. NRS 92A.320 now provides:

"Fair value," with respect to a dissenter's shares, means the value of the shares determined:

1. Immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable;

2. Using customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal; and

3. Without discounting for lack of marketability or minority status.

In the related context of determining "fair cash value" under former NRS 78.510, this court has adopted a flexible approach that looks to a number of different factors. *See Southdown, Inc. v. McGinnis*, 89 Nev. 184, 188-90, 510 P.2d 636, 639-40 (1973) (noting that "[t]he words 'fair cash value' . . . have been construed by courts elsewhere to mean the intrinsic value of the dissenting shareholder's interests determined from the assets and liabilities of the corporation considered in the light of every factor bearing on value"), *superseded by statute on other grounds as stated in United Ins. Co. v. Chapman Indus.*, 120 Nev. 745, 747-48, 100 P.3d 664, 666 (2004); *see also Steiner*, 5 F. Supp. 2d at 1126 ("any . . . factor bearing on value" would be considered in determining fair value).

Like other Model Business Corporation Act states, we conclude that, in determining "fair value, the trial court may rely on proof of value by any technique that is generally accepted in the relevant financial community and should consider all relevant factors, but the value must be fair and equitable to all parties." *Advanced Communication Design v. Follett*, 615 N.W.2d 285, 290 (Minn. 2000); *see also Torres v. Schripps, Inc.*, 776 A.2d 915, 923-24 (N.J. Super. Ct. App. Div. 2001); 18 C.J.S. *Corporations* § 394 (2011). This flexible approach "allows the trial court to adapt the meaning of fair value to the specific facts of the case." *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 360 (Colo. 2003).

*Burden of proof*

Despite Nevada's flexible approach, appellants contend that Cordillera did not satisfy its burden of proof in establishing the fair value of its stock. Appellants' argument, however, presumes that in an appraisal matter, the burden is Cordillera's alone, a presumption not supported by the statutory language or existing Nevada caselaw.

The question of which party bears the burden of establishing the fair value of a corporation's stock at the time of merger is not expressly answered by Nevada's dissenters' rights statutes. NRS 92A.300-.500. And the question is one of first impression for this court. Other jurisdictions have, without much discussion, variously placed the burden on the corporation, the dissenting stockholder, or neither. *Matter of Cohen*, 636 N.Y.S.2d 994, 996 (Sup. Ct. 1995) (citing cases from the Eleventh Circuit Court of Appeals, Georgia, Delaware, Oregon, and Ohio).

Delaware corporate laws, like Nevada's, require the court to make the determination of fair value. *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 221 (Del. 2005). Instead of assigning the burden exclusively to one side or adopting the "no burden" approach taken in New York, *Matter of Cohen*, 636

N.Y.S.2d at 996, the Delaware Supreme Court has concluded that "[i]n a statutory appraisal proceeding, both sides have the burden of proving their respective valuation positions by a preponderance of evidence." *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999); *see In re Appraisal of Metromedia Intern. Group*, 971 A.2d 893, 899 (Del. Ch. 2009); *Highfields Capital, Ltd. v. AXA Financial*, 939 A.2d 34, 42 (Del. Ch. 2007); *Montgomery Cellular Holding*, 880 A.2d at 221. However, "[e]ven if one side fails to satisfy its burden, the Court is not free to accept the competing valuation by default, but must use its own independent judgment to determine fair value." *Montgomery Cellular Holding*, 880 A.2d at 221; *see Highfields Capital*, 939 A.2d at 42-43 (if neither party adduces evidence sufficient to satisfy this burden, "the court must then use its own independent judgment to determine fair value" (internal quotations omitted)); *Metromedia*, 971 A.2d at 900 ("[A]fter having considered the parties' legal arguments and the respective experts' reports and testimony supporting their valuation conclusions, the Court has broad discretion either to select one of the parties' valuation models or to fashion its own."); *see also Gonsalves v. Straight Arrow Publishers*, 701 A.2d 357, 361 (Del. 1997) (noting that it is the district court's responsibility to "independently determine the value of the shares that are the subject of the appraisal action"); *see generally Chrome Data Systems, Inc. v. Stringer*, 820 P.2d 831, 833 n.2 (Or. Ct. App. 1991) (noting that, in Oregon, which has a relevant statute similar to Nevada's, the dissenting stockholders do not necessarily bear the burden of proof and suggesting that, even if no evidence is offered, dissenting stockholders are entitled to fair value).

The Delaware approach accords with notions of judicial economy and fairness, because it places on the parties the affirmative duty to prove their respective valuations but recognizes that, in the end, the court remains the final arbiter of fair value. As in Delaware, Nevada law makes the court the final arbiter of fair value. *See* NRS 92A.490(1) (the "corporation shall . . . petition the court to determine the fair value"); NRS 92A.490(5)(a) ("dissenter . . . is entitled to a judgment [f]or the amount, if any, by which the court finds the fair value of the dissenter's shares"). Accordingly, we adopt Delaware's approach in determining fair value of a dissenting stockholder's shares of stock. As such, in a stockholder's right-to-dissent appraisal action, both the dissenting stockholder and the corporation have the burden of proving their respective valuation conclusions by a preponderance of the evidence in the district court. Final responsibility for determining fair

value, however, lies with the court, which must make its own independent value determination.

## The district court's fair value determination

[Headnote 5]

An appellate court reviews a district court's determination of fair value under an appraisal statute such as NRS 92A.490 under an abuse of discretion standard. *See Gonsalves*, 701 A.2d at 360; *see also In re 75,629 Shares of Common Stock*, 725 A.2d 927, 931 (Vt. 1999); *Dodd v. Potomac Riverside Farm, Inc.*, 664 S.E.2d 184, 190 (W. Va. 2008).

Appellants argue that the district court abused its discretion here by not deciding fair value based on the four factors discussed in *Steiner Corp. v. Benninghoff*, 5 F. Supp. 2d 1117, 1123 (D. Nev. 1998). But in *Steiner*, the court indicated that it already decided, in a prior, unreported decision, that " 'fair value' would be determined by considering (1) the pre-merger market value of the shares, discounted for illiquidity, (2) the pre-merger enterprise value of the corporation as a whole, (3) the pre-merger net asset value of the corporation, and (4) any other factor bearing on value. Each measure of value will then be assigned a certain weight, and then averaged appropriately." *Id.* (quotations omitted).[6] Here, the district court was not provided the evidence necessary to calculate and apply the *Steiner* factors reliably.[7] "Where, as here, a controlling stockholder has provided [limited] evidence, either pre-merger or during the trial, to enable the Court of Chancery to perform its mandated task, the Court may rely upon its expertise and upon whatever evidence is presented to determine fair value independently." *Montgomery Cellular Holding*, 880 A.2d at 222. This left the district court "free to use whatever methodology was supportable by the record to reach a valuation result," *id.*, whether by adhering to one of the parties' properly supported valuations or by fashioning its own. *See In re Appraisal of Metromedia Intern. Group*, 971 A.2d 893, 900 (Del. Ch. 2009) ("[A]fter having con-

---

[6]Of note, the first *Steiner* factor discounts for lack of liquidity, which is contrary to the 2009 revisions of NRS 92A.320 providing that no marketability discount should be taken.

[7]Instead of presenting evidence supporting the factors listed in *Steiner*, appellants presented testimony as to the book value of the shares. The district court did not abuse its discretion in rejecting that testimony alone as probative of the fair value. "Book value is entitled to little, if any, weight in determining the value of corporate stock, and many other factors must be taken into consideration." *Bendalin v. Delgado*, 406 S.W.2d 897, 900-01 (Tex. 1966); *see* 18A Am. Jur. 2d *Corporations* § 374 (2004).

sidered the parties' legal arguments and the respective experts' reports and testimony supporting their valuation conclusions, the Court has broad discretion either to select one of the parties' valuation models or to fashion its own.'').

In light of the flexible standard of determining fair value, under which the district court is to consider all relevant factors presented by each of the parties and any independent examiner, and considering the evidence presented by Cordillera and appellants, we conclude that appellants have not demonstrated that the district court abused its discretion in calculating the fair value of Cordillera's shares. The district court considered several factors reflecting value, including the price that Cordillera paid for the shares of stock in 2006 and the price that appellants indicated on an SEC document as the offering price of the series B preferred stock on the merger date, all of which were $3 per share. While neither party provided extensive calculations as to the shares' fair value, the district court did not abuse its discretion in determining the fair value of Cordillera's shares based on the evidence before it. As such, we affirm the district court's judgment.

GIBBONS and PICKERING, JJ., concur.